　　　　　　　　　CASES IN CHANCERY.

*April* 1st.

BENEDICT *against* LYNCH.

A bill for a specific performance of an agreement will not be sustained where the remedy is not mutual, or where one party only is bound by the agreement.

In the sale of lands, *time* may make part of the essence of the contract, and on default at the day, without any just excuse, or any acquiescence, or subsequent waiver by the other party, the court will not help the party in default.

Where *A.*, in *March*, 1810, agreed to purchase a farm of B., and to pay 250 dollars in one year ; one third of the residue of the purchase money in one year thereafter ; and the other two thirds in the two successive years; and on the payments being made, B. was to give a deed ; and if he failed in the payments, or either of them, the agreement was to be void : and A. entered into possession under the agreement, and made improvements, but made no payments ; and B., in *October*, 1813, above two years after the first default, supposing the agreement void or abandoned, sold the farm to a third person ; a *bill* filed by A., in 1814, on a tender of the whole purchase money, for a specific performance of the agreement, was dismissed with costs.

If a deed, after mentioning a specific consideration, adds, " and for other considerations,"*it seems*, that parol evidence is admissible to show what were those other considerations.

THIS was a bill for the specific performance of an agreement for the sale of the land. The plaintiff stated, that, on the 28th of *March*, 1810, he contracted with the defendant for the purchase of land, described in the agreement signed by the defendant, which was as follows : " that it was thereby agreed between the parties, that the defendant sell to the plaintiff a piece of ground, (described therein,) containing 39 acres, at 14 dollars and 50 cents per acre, and upon the following conditions being performed, to wit, that the plaintiff pay to the defendant 250 dollars in one year; (*March*, 1811 ;) one *third* of the remainder in one year thereafter ; (1812;) one *third* in the next year; (1813;) and the balance in the year following, (1814,) with interest, annually, on all the sums ; and upon his complying with the payments, the defendant agreed to give a deed. If the plaintiff

failed in the payments, or any of them, the agreement to be void." That the plaintiff made and delivered to the defendant a counterpart of the agreement.

That the plaintiff took immediate possession of the land, cleared eight acres, and built a house thereon; but, in consequence of unforeseen disappointments, failed to make his payments. That in order to induce the defendant not to sue him for the purchase money, the plaintiff, subsequently to the above contract, agreed with the defendant to clear five acres in one year, and, in consideration thereof, the defendant promised not to prosecute the plaintiff during that year.

That he had since procured and tendered (in *January*, 1814) all the purchase money, to the amount of 720 dollars, though the whole of it was not due; but the defendant refused to accept the money, alleging, that the contract was void, and had brought an action of ejectment against the plaintiff.

The plaintiff prayed for an injunction, which was granted, *March*, 12th, 1814, on the plaintiff's depositing the 720 dollars with the register.

The *answer* of the defendant admitted the agreement of the 28th of *March*, 1810, and that it was without any other consideration than what was therein stated; but denied the delivery by the plaintiff of any counterpart of the agreement. The defendant admitted the entry of the plaintiff on the land, and the erections and improvements made by him, which he had enjoyed and used, down to the time of the answer, without offering any compensation to the defendant; that he refused to accept the money tendered to him by the plaintiff, in *February* or *March*, 1814, and to execute any conveyance.

The defendant also stated, that, in 1811 or 1812, the plaintiff often declared his inability to pay, and disclaimed all right to the premises, and relied wholly on the liberality of the defendant to permit him to occupy the premises un-

1815.

BENEDICT
v.
LYNCH.

til the defendant could sell them. That in the spring of 1812, the defendant required the plaintiff to quit the premises; and the plaintiff then agreed that, if he might be allowed to occupy the premises for one year, he would clear and fence five acres of the land, to which the defendant assented. But the defendant denied that it entered into the consideration of this agreement that the defendant should not sue for the purchase money; that the defendant had brought an action of ejectment for the premises, and had recovered judgment; that the defendant had since frequently referred purchasers to the plaintiff to show them the premises, and he had done so. That on the 1st of *October*, 1813, *Samuel Hills* offered to purchase the premises, and the plaintiff acquiesced in the sale, and declared that he should abandon the premises whether *Hills* purchased or not. That on the 2d of *October*, 1813, the defendant contracted with *Hills* for the sale of the premises for 700 dollars; and he paid above 500 dollars of the purchase money.

The facts alleged in the answer were proved by the defendant's witnesses.

The plaintiff proved that the farm was worth more than 20 dollars per acre, and that the improvements on it were worth about 300 dollars, the annual value of which was about 40 dollars.

*Gold*, for the plaintiff.

*J. Lynch*, for the defendant.

The points and authorities are so fully discussed in the judgment delivered by the court, that it is unnecessary to state the arguments of the counsel.

THE CHANCELLOR. I have considered this case with great attention, and I cannot discover any just principle

arising out of the facts that will warrant a decree for a specific performance.

The bill is founded on an agreement of the 28th of *March*, 1810, signed by the defendant only, and by which he agreed to sell to the plaintiff the land in question, " upon the following conditions being performed at the times stipulated, to wit, that the plaintiff should pay the defendant 250 dollars within one year ; one third of the remainder in one year thereafter ; one third in the next year ; and the balance in the year following, with interest, annually, upon all sums unpaid from the date ; and upon his complying with the above payments, with the interest, at the respective times for that purpose above mentioned, the defendant agreed to give a deed ; but if he should fail in them, or either of them, the agreement to be void." Under this agreement, the plaintiff entered into possession, and made improvements, but he made no payments ; and in *October*, 1813, (and which was above two years and a half after the first default,) the defendant, considering the agreement as void or abandoned, sold the land to another person, and, in *February*, 1814, the plaintiff filed his bill for a specific performance.

I need not stay to examine how far the objection of a want of mutuality is applicable to this contract, since the decision can be placed with more satisfaction upon the intrinsic merits of the case. But the point being stated by the counsel, I am unwilling to pass it by, without observing that it has been ruled in several cases, (*Armiger* v. *Clarke, Bunb.* 111. *Bromley* v. *Jefferies*, 2 *Vern.* 415.,) that a bill for a specific performance will not be sustained, if the remedy be not mutual, or where one party only is bound by the agreement. This doctrine received a very clear illustration, and an explicit sanction, in a late decision by Lord *Redesdale*. (*Lawrenson* v. *Butler*, 1 *Schoale & Lefroy*, 13.) Though there are other cases in which an agreement has not been deemed within the statute of frauds, and a specific performance has been decreed, when the contract was

1815.

BENEDICT
v.
LYNCH.

signed only by the party sought to be charged, (*Seton* v. *Slade*, 7 *Vesey*, 265. *Fowle* v. *Freeman*, 9 *Ves.* 351.,) yet the contrary opinion appears, from the most recent decisions, to be now prevailing. (*Champion* v. *Plummer*, 5 *Esp. N. P.* 240. *Huddleston* v. *Briscoe*, 11 *Vesey*, 592.)

There was an express stipulation in this contract, that *if the plaintiff failed in either of his payments, the agreement was to be void.* The first question that naturally presents itself is, whether the time was not here made part of the essence of the contract, and whether the contract did not become void on the failure of the plaintiff to make the first payment, in 1811. Lord *Thurlow* is said to have intimated, in *Gregson* v. *Riddle*, (cited in 7 *Ves.* 268.,) that time could not be made of the essence of the contract even by a positive stipulation of the parties, but there was no decision on that point; and in other and later cases, (*Lloyd* v. *Collett*, 4 *Bro.* 469. 4 *Ves.* 589. n. *Seton* v. *Slade*, 7 *Ves.* 265.,) it has been admitted, that the parties may make the time of the essence of the agreement, so that if there be a default at the day without any just excuse, and without any waiver afterwards, the court will not interfere to help the party in default. The case is not analogous to that of a mortgage, where the only object of the security is the payment of the money, and not the transfer of the estate ; and it seems to be conducive to the preservation of good faith, and the rights of parties, that if a contract of sale is expressly declared to be vacated on non-performance by a given day, that the courts should not interfere, as of course, to annul such a provision. The opinion of Lord *Loughborough*, in *Lloyd* v. *Collett*, contains a strong and decisive argument upon this point. " There is nothing," he observes, " of more importance than that the ordinary contracts between man and man, which are so necessary in their intercourse with each other, should be certain and fixed, and that it should be certainly known when a man is bound, and when

not. There is a difficulty to comprehend how the essentials of a contract should be different in equity and at law. It is one thing to say the time is so essential that, in no case in which the day has been by any means suffered to elapse, the court would relieve against it, and decree performance. The conduct of the parties, inevitable accident, &c., might induce the court to relieve. But it is a different thing to say the appointment of a day is to have no effect at all; and that it is not in the power of the parties to contract that, if the agreement is not executed at a particular time, they shall be at liberty to rescind it. In most of the cases there have been steps taken." " I want a case," he says, " to prove that where nothing has been done by the parties, this court will hold, in a contract of buying and selling, a rule that the time is not essential part of the contract. Here no step had been taken, from the day of the sale for six months after the expiration of the time at which the contract was to be completed. If a given default will not do, what length of time will do? An equity arising out of one's own neglect! It is a singular head of equity." It would be impossible for me to add to the perspicuity and energy of this reasoning; and the Lord Chancellor, in that case, held, that as the vendor had omitted to complete a purchase for six months, being all that time in default, he was considered as having abandoned the contract; and he said there was no case where no step had been taken by the one party, and the other had immediately, when the time had elapsed, refused to perform the agreement, that a performance had been decreed.

It may, then, be laid down as an acknowledged rule in courts of equity, (and so the rule is considered in the elementary treatises on this subject,) (*Newland on Contracts*, 242. *Sug. L. of Vend.* 3d *Lond.* edit. 268.,) that where the party who applies for a specific performance has omitted to execute his part of the contract by the time appointed for that purpose, without being able to assign any sufficient jus-

1815.

BENEDICT
v.
LYNCH.

tification or excuse for his delay ; and when there is nothing in the acts or conduct of the other party that amounts to an acquiescence in that delay, the court will not compel a specific performance.    The rule appears to be founded in the soundest principles of policy and justice.    Its tendency is to uphold good faith and punctuality in dealing.    The notion that seems too much to prevail, (and of which the facts in the present case furnish an example,) that a party may be utterly regardless of his stipulated payments, and that a court of chancery will, almost at any time, relieve him from the penalty of his gross negligence, is very injurious to good morals, to a lively sense of obligation, to the sanctity of contracts, and to the character of this court.    It would be against all my impressions of the principles of equity, to help those who show no equitable title to relief.

It may be useful, however, before we come to apply the rules of the court to the facts in this case, to look more particularly into the cases on the subject of relieving parties from delays in performance of contracts for the sale of land.

It was formerly supposed that the time fixed on for the completion of the contract was quite immaterial ; and there are some cases which have given countenance to this idea.

The case of *Vernon* v. *Stephens*, (2 *P. Wms.* 66.,) was a bill brought by a vendee for a specific performance after repeated defaults ; but in that case different payments had been made and accepted, and further time had been given after each default, by agreement in writing; and the final default, after the last agreement, arose from the death of the original vendor, and a neglect for some time to take out letters of administration, so that the last default was reasonably accounted for ; and the case, therefore, proves nothing in favour of a party in default, without excuse, and without a waiver from the opposite party.    The case of *Gibson* v. *Patterson*, (1 *Atk.* 12.,) in which Lord *Hardwicke* was supposed to have held, that non-performance at the time was

very immaterial, is proved to be most inaccurately reported, and that Lord *Hardwicke* made no such decision in that case, and the facts admitted of no such deduction. (4 *Ves.* 689, 690. n. 4 *Bro.* 497. 13 *Ves.* 228, 9.) And, indeed, in another case, (1 *Ves.* 450.,) Lord *Hardwicke* lays down the true rule on this subject, when he says, that it is the business of this court to relieve against lapse of time in the performance of an agreement, and *especially where, the non-performance has not arisen by default of the party seeking to have a specific performance.* So it was also held, in the case of *Hayes* v. *Caryll,* as early as 1702, (5 *Viner,* 538. pl. 18.,) that where one person has trifled, or shown a backwardness in performing his part of the agreement, equity will not decree a specific performance in his favour, especially if circumstances are altered.

I do not perceive, therefore, that in the more ancient cases there is real ground for the opinion that the time stipulated for the performance of a contract is of no moment in this court, and I am at a loss to conceive how such an extravagant proposition should ever have gained currency. It is certainly, and very justly, exploded in the modern decisions.

In *Pincke* v. *Curtis,* (4 *Bro.* 329.,) the suit was by the vendor for a specific performance, and the plaintiff had failed, for near a month after the specified day, to complete his title; but it appeared that the delay arose because the title depended upon the event of a chancery suit, and the vendee was apprized of this cause of the delay, and acquiesced in it, and was willing to go on with the purchase, and a performance was consequently decreed. The case is not well reported; (see the note to *Sugden's Law of Vendors,* p. 278.;) but these were the true grounds of the decree, and the Chancellor said, that if the vendee had called for the deposit at the end of the time limited for completing the purchase, and had insisted not to go on with the purchase, the court would not have compelled him. The

1815.

BENEDICT
v.
LYNCH.

case of *Fordyce* v. *Ford*, (4 *Bro.* 494.) is to the same effect. There was a delay short of two months beyond the stipulated time ; but when the abstract of the title was delivered to the vendee, he made no objection, but acquiesced ; and if he had not, said Lord *Alvanley*, I should not have decreed a performance ; and the rule now is, that if either party has been guilty of gross negligence, the court will not lend its aid to complete the contract ; and he hoped, he said, that it would not be understood, from that decision, that a man is to enter into a contract, and then to think that he has his own time to perform it.

These were cases of delay on the part of the vendor ; but the rule applies equally to both parties, and the purchaser who neglects his part of the engagement, will be left to his remedy at law, (if he has any,) though he may have paid part of the purchase money. He cannot be suffered to lie by and speculate on the rise of the estate. The cases of *Spurrier* v. *Hancock*, and of *Harrington* v. *Wheeler*, (4 *Ves.* 667. 686.,) were on bills filed by the purchaser for a specific performance ; and, in the latter case, he had paid part of the purchase money; but the bill, in each case, was dismissed, on account of his *laches*, and trifling and unreasonable delay.

The observation of the Master of the Rolls, in *Milward* v. *Thanet*, (5 *Ves.* 720. n.,) is very emphatical on the subject before us. He observed, that Lord *Kenyon* was the first who set himself against the idea that had prevailed, that when an agreement was entered into, either party might come at any time ; and that it was then perfectly known that a party cannot call upon a court of equity for a specific performance, unless he had shown himself ready, desirous, prompt, and eager.  *Guest* v. *Hornfray* (5 *Ves.* 818.) is another strong case on the point. Specific performance was there refused on account of the *laches* of the plaintiff, who was the vendor. Here the purchaser had been put into possession when the contract was made, but

the question was, as the court said, whether the plaintiff had done enough to show he took all the pains he could to be ready to carry the agreement into effect; and as it did not appear that he had done all he ought to have done, and though the delay was but three months, and the plaintiff had met with an unwilling purchaser, who meant to get rid of the contract if he could, the bill was dismissed. If, on the other hand, the circumstances of the case, and the conduct of the opposite party, will afford ground for a just inference that he has acquiesced in the delay, and waived the default, the non-performance at the stipulated time will be overlooked, and will be deemed to have been waived by the other party. The cases of *Seton* v. *Slade*, (7 *Ves.* 265.,) of *Smith* v. *Burnam*, (2 *Anst.* 527.,) and of *Paine* v. *Meller*, (6 *Ves.* 349.,) as well as many others which might be cited, turn upon this distinction. From the review which I have taken of the cases, the general principle appears to be perfectly established, that time is a circumstance of decisive importance, in these contracts, but it may be waived by the conduct of the party ; that it is incumbent to the plaintiff, calling for a specific performance, to show that he has used due diligence, or, if not, that his negligence arose from some just cause, or has been acquiesced in; that it is not necessary for the party resisting the performance to show any particular injury or inconvenience; it is sufficient if he has not acquiesced in the negligence of the plaintiff, but considered it as releasing him.

These principles appear to me to be founded in natural justice, and to be equally conducive to public convenience, and to the maintenance of public morals.

I shall cite only one more case, that of *Alley* v. *Deschamps*, (13 *Ves.* 224.,) which was a late decision by Lord *Erskine*, and which, in all the circumstances of the case, is very analogous to the one now before me. It was a bill in behalf of a purchaser for a specific performance ; he

was to pay by instalments, and was put into possession upon the execution of the agreement. He, afterwards, became embarrassed and unable to comply with the terms, though he had paid 100*l*. in part satisfaction of the contract. The bill was filed before the last instalment was due. The defendant, in his answer, said, that the contract was considered by him as relinquished, and that the plaintiff was suffered to continue in possession as tenant. The Lord Chancellor said, he should take it that the agreement was not abandoned, and that the plaintiff did not, by his own act, consent to rescind it; but, he said, that under the circumstances of the case, there was not a colour for decreeing a specific performance; and that his judgment proceeded upon a plain principle, that a bill for specific performance would not be endured under such circumstances; that it would be dangerous to permit parties to lie by, with a view to see whether the contract would prove a gaining or losing bargain, and, according to the event, either to abandon it, or, considering the lapse of time as nothing, to claim a specific performance; that here nothing had been done except the one small payment towards performance when the purchaser became bankrupt, nor afterwards, until the premises, by a subsequent event, proved to be much more valuable than they were at the time the contract took place. The bill was dismissed, with costs.

It is impossible not to be struck with the close analogy between that and the case now under consideration. Here the purchaser has paid nothing, but suffered defaults to accumulate, year after year, as if he had forgotten that he was under any obligation to pay; and if the land had not risen in value within the last two or three years, so as to render the purchases an object of speculation, there is no reason to believe that the plaintiff would ever have attempted to raise the money out of the benevolence of his friends. I think that, within the reason and spirit of all the cases, here

was a gross negligence on the part of the plaintiff, that takes away his claim to assistance.

The circumstances attending the new agreement between the parties, of the 14th of *March*, 1812, prove, conclusively, that the original contract was expressly abandoned. This agreement, by which the plaintiff contracted with the defendant to clear off and fence five acres within one year, does not, of itself, import that the original agreement was, or was not, abandoned ; and parol evidence is admissible to explain that fact, which is collateral to the operation of the instrument. Such evidence would not vary or qualify the effect of it ; it would only go to repel any presumption, or rebut any equity, which might be attempted to be induced from the instrument itself. But there is another ground on which the parol evidence to which I allude is competent. This agreement is stated to have been given in consideration of one dollar, *and for various other considerations ;* and it was admitted by Lord *Hardwicke,* in the case of *Peacock* v. *Monk,* (1 *Ves.* 127.,) that if a deed, after mentioning any particular consideration, adds, *and for other considerations,* you may enter into proof of these other considerations ; and the same doctrine was alluded to in the case of *Maigley* v. *Hauer,* (7 *Johns. Rep.* 341.) There is no repugnancy, in such a case, between the proof and the deed. It is then proved, in this case, by two witnesses, (*James Lynch* and *Mansel Falcot,*) that when the agreement was made, the defendant, by his agent, stated to the plaintiff, that as he had failed in his contract, the plaintiff must sell the land to some other person ; that the plaintiff admitted he could not pay for the land, and that if the defendant would permit him to remain on the land for one year, he would then abandon the same, and give up the possession ; and, as a consideration for continuing on the land for the year, he would clear and fence five acres ; and that the writing was given for that purpose. In addition to this testimony, we have that of *Josiah Hills,* who states, that in

*September*, 1813, he went with *Samuel Hills* to the plaintiff, and the plaintiff then told him that he could not pay for the land, nor complete his purchase, and that he expected to leave the land in the course of the then next winter, and that he was willing to give up the possession, and even offered to sell his claim under the contract for 10 dollars, though without warranting a deed. This was the person who, a few days after, purchased the land of the defendant, and paid most of the consideration money. No doubt this purchase was greatly induced by that conversation, and the plaintiff, after such continued and gross neglect in not complying with his original contract, and after such express abandonment of the purchase, and after such admissions to a subsequent purchaser, comes into this court, without any colour of equity, to ask for a specific performance. I shall, accordingly, dissolve the injunction, and dismiss the bill, with costs.

                                                   Decree accordingly.