M’Girk, C. J.,
delivered the opinion of the Court.
This is a bill brought by Elias Rector, in his life-time, against RisdOn H. Price.
The hill goes for specific performance of a contract for the sale of land. It appears by the bill, that on the 21st of June, 1816, or thereabouts, Rector, in company with Messrs. Riddle, Beckle & Sloo, purchased of the United States, 1984 acres of tad, situate in the Illinois, of which Rector owned one-fourth part, and paid and. *265 obtained patents therefor, in the the year 181 — . That shortly afterwards, Rector purchased of Justus Post, the undivided third part of 3540 96-100 acres in the Illinois, also, where the town of America stands, in all, 476 acres. That the land purchased of Post was entered, but not paid for, and Rector held Post’s bond, to make title as soon as patents could be obtained from the United States. That Rector, in June 21st, 1816, sold to Price the third of his interest in the above land; that is to say, 62 acres in the first tract, and 414 in the second parcel, for which Price paid him in land and money, as follows; eleven thousand nine hundred dollars in all; sixteen hundred arpents of land in the county ot Howard, m Missouri, at the price of four thousand eight hundred dollars ; one lot of land in the town of St. Louis, at the price of eight hundred dollars; five arpens of land, adjoining the town of St. Louis, at the price of two thousand five hundred dollars; three hundred and fifty acres of land, on an island in the Mississippi river, seven miles above St. Louis, for the price of two thousand eight hundred dollars; and the sum of one thousand dollars in cash. That, at the time of the contract, patents had not issued for said land. Rector gave his bond to Price, in the penalty of $23,800, conditioned to make to him a good title, free from all incumbrances, in three years from the date, or sooner, if patents could be obtained. That, at the time of the sale, it was well known to Price, that divers persons were interested in the entries of the lands, and that the ultimate time of making final payments, would not arrive within the three years limited for making the complete title, by Rector to Price, and that Rector intended to accelerate the payments. That, immediately after the sale, Price took possession of the land, and has ever since remained in possession. That Price had perfect knowledge of the quality, situation, and value of the land, and expressly denies misrepresentation to him. That, at the time of the sale, the complainant entertained a well founded hope that patents would have issued from the United States, in time to have saved his bond, and that, in this, complainant was disappointed. That, being anxious to save his bond from forfeiture, he did, on the day his bond was out, make and tender to Price, a deed in fee simple, for said land, and that the patent had not yet issued for the land, nor had Post paid to the United States the money due on said land. That Price refused to accept said deed, and sued on said bond immediately, and recovered the penalty of 23,800; and that Price is about to take out execution thereon. That in March, 1821, as complainant was informed, final payments were made by Post, and patents issued, but not come to Post’s hands. Post, on the 1st May, 1821, made a deed of the land to Rector, and that he, on 20th June of the same year, and still before the arrival of the patents, made and executed another deed to Price, for the land, which was also refused.
The hill then states, that Price had failed to cpnvey to him one tract of land in payment, at $2,800, and that the title to the 1600 arpents tract, had entirely failed, which was sold to him at $4,800, and that these two sums he was in danger of losing by reason of Price’s insolvency.
And also, that a conditional division .of lots, in the town of America, was madp between Mm, Price, .and others, setting apart the part Price should have, in the event it should be decreed that Price should take the land.
The bill then states, that the 62 acres he sold to Price, out of the tract entered by Riddle & Co. had been long patented, and that the complainant had ofiered to make Price a title to that, but does not show, whether the patents issued for that part, be *266 fore or since the bond became forfeited, nor whether before or since that period, the deed was offered.
The bill then prays a specific performance, and that Price may be compelled to take the land, and that he be enjoined, on the judgment at law, and for general relief.
The supplemental bill states, that the patents have come to hand. This bill was filed August, 1822.
The defendant’s answer admits the purchases made as stated in the bill; admits the judgment at law, and that he is about to take out execution; denies taking possession of the ¡and; admits he knew of the nature of Rector’s title, and asserts, he refused to purchase, unless Rector would bind himself to make title within three years, at most.
The answer denies all knowledge of situation, except from Rector; and in answer to that part of the bill, which calls an answer, if any misrepresentation was made, answers and charges: „
First. That the plan of the town, exhibited to him at the time of the purchase, is not the one on which the town was afterwards laid off, by which his number of lots were diminished.
Second. That the town scite is not high and dry, as represented to him by Rector.
Third. Misrepresentations about intended improvement, and a canal.
The answer charges it to have been Rector’s own fault, that the patents did not issue in time to save the bond, and shows large sums of money were received of Price and T. Douglass, in payment for the same land; and insists, that, with that money, Rector ought to have paid the United Slates, and obtained the patents.
•The answer admits, Rector tendered the deeds, and that he refused to take them, because Rector had no title; admits the recovery on the bond, and charges that Rector vexatiouslv delayed him in his recovery, say two years, and caused the defendant to expend large sums of money, &c.; admits patents may have issued, but insists, he ought not now tobe compelled to take the land.
The defendant admits his inability to convey good titles for the two tracts’mentioned, and offers to deduct the price of them, with interest, from the sum equitably due him.
There were some depositions in this case, that will be noticed in their proper place, if deeded material.
The complainant relies on the following points, for a decree.
First. That, in this case, time is not material.
Second. That when it is liot material, equity always relieves against a forfeiture.
Third. That when the title of the vendor is incomplete, at the time of the sale, and that fact is known to the. vendee, a Court of Equity will give time to complete the title, and not dismiss the hill.
Fourth. That, in equity,-if a good title can he made at the time of the decree, it is enough.
Fifth. That when the vendee is let into possession, at the time of the contract, or immediately after, a specific performance will never he refused on the objection of time having passed.
Sixth. That no change of value, after the contract made, can be an objection to a specific performance.
Seventh. The rule, that equity will not specifically enforce a hard bargain, is to be understood with reference to the time of the contract, not the decree.
*267 Eighth. That where the value, ideal or real, is known to both parties at the time of the contract, equity holds it to be fair and never hard.,
Ninth. That as to quality and value, the rule is caveat erapior.
Tenth. It is doubtful if the parties themselves can make time in equity material, so as to tie up the hands of the Court.
Eleventh. That a total failure of consideration is no bar to a specific performance.
The defendant resists the decree of a specific performance,, on, the following objections :
First. Because the complainant’s own bill shows no equity.
Second. Because he insists that time, in this case, was deemed by the parties to be material, and that this appears from the terms of the contract, the nature of the transaction, and from the evidence.
Third. Because Rector has not used reasonable diligence in procuring the patents; he-has not done all in his power to perform his parhof the contract; but on the contrary, has been guilty of gross negligence. '
Fourth, Because the value of the land has greatly fallen, and Price cannot now be placed in as good a condition as he would have been, had Rector made title as soon as he might have done.
Fifth. Because Price was deceived as to the situation of the town, as to the quality of tho land, and the plan on which it was ultimately laid off.
Sixth. Because the Court cannot now do complete justice, by decreeing a specific performance.
The extent of the damage done'Price by Rector’s delay, cannot be ascertained so as to make compensation.
The whole of the case seems to resolve itself into three main points :
First. Is time, in this case, material, and of the essence of the contract?
Second. If it is, has Price, by any act of his, waived the materiality of the time ? and
Third. If he has not, shall the defendant be compelled to take that part of the land to which Rector had a good title ? •
As to the first point, “ is time, in this case, material ?” It would seem, from principle, that time, in all contracts, ought to be considered material; for that, when a person is about to enter into a contract, it is for him to consider what time is necessary to enable him to perform his agreement; and when the time is fixed, it is as much a part of his promise that he will do the act within the time, as it is a part of the promise that he will do the act itself. At law, if a man promise to deliver a horse on a certain day, and the day elapse without the delivery of the horse, the contract is broken, and the offer to deliver the horse afterwards, will never make amends for the violated promise. And why is it so ? Because the time is as much a part of the contract as the act to he done.
' Mon are induced to part with their property and money, as a consideration for acts to be done, not because they believe that the thing to be done will be of advantage to them, if done at some time or other, in the period of a long life; but because they are persuaded, if the thing is done in a given period, it will he of benefit. Hence it is that time generally enters into contracts. ‘
Suppose the law was, that time, in contracts, should in no case be material; what would be the consequence ? It would be that none would be found to part with money or property, in consideration of promises, and acts to be performed in future; *268 nor, on the other hand, would any thing to be done precede its recompense. And as, in the nature of things, all corresponding acts and things cannot he simultaneous, all mutual intercourse would cease. That the law should be otherwise, is wise, fast and good.
That time, in law, is material, cannot be disputed. Now, if it is of importance in a Court of Law, that time should be deemed material, it should be of equal importance in a Court of Equity, and never should be adjudged otherwise, unless it be to effect some great end of justice, to save a party from injury when he is not, in-good conscience, in default, and the other party can be placed in the same situation, or as good a situation as he would have been in, had the agreement been performed in due lime.
How a Court of Equity can exactly know how good a situation the obligee would have been in, had the agreement been performed in due time, is a question very difficult to determine. Courts of Equity should, therefore, see their way extremely clear, belore they exercise this branch of their equitable power.
That Courts of Equity have interfered, and decreed a specific performance, and compelled a vendee to take his bargain, after the time had elapsed, is a proposition too old to be now disputed. Bat they have always done it under ihe influence of a watchful eye, and have required the party seeking, to be relieved against bis broken agreement, and the lapse of time to show, not only that ihe other party can be placed in statu quo, but that he, on his part, was at all times desirous; not only desirous, hut at all times actively diligent to perform his agreement; and that, notwithstanding he was prevented by intervening obstacles, which he, as a desirous, actively diligent man, could not remove.
We will examine a case, and see what the Court required, and how far it went.
The first case cited by complainant, is Gibson v. Patterson, which is shown to have been mis-reported, in 1 Atkins, 12, (see 1 Johns. Chancery Rep. 370, Benedict v. Lynch, Sugden, L. V. 279).
This case oí Patterson and Gibson, is now holden not to he law. The first case cited, for the complainant to prove time is not material, is the case of Wynn v. Morgan, 7 Ves. Jr., 202. In this case a hill was brought by the vendor, to enforce a specific performance. It was admitted in this case, that time was material, but that the objection taken by ihe vendee was not as to time, hut as to the title; and he made that objection within the time, and when the hill was brought, hejnade the same objection, and no other.
The master of the' rolls decreed a specific performance, on the ground, that the defendant made no objection as to time, but as to tille; and now that ihe title was clear, the objection was no longer available.
It is not to be denied, that Courts of Equity have went very far on this subject of time, always requiring due diligence, proper exertions, and no waiver; and almost every case seems to depend on its peculiar circumstances.
In this case, the parties themselves seem to have deemed time material, and we cannot say it is not so to this point, to wit: the materiality of time. The best and. most satisfactory case tobe found, is in 1 Johns. Ch. Rep., 370.
In the case before the Court, we cannot doubt as to time being material, and of the essence of the contract. Both parties knew the state of the title, and with this knowledge, Price agreed to give three years, at most to complete the title, and Recar, under this same knowledge, obliged himself, within three years, at most, to clear *269 out the title, and to make a good one to Price. If Rector had met with new difficulties in the meantime, such as he could not surmount by anxious, active and well directed diligence, then he might apply for relief; but he has met with none, and it will not do to say, Post would not pay the money on the land, therefore the patents could not issue.
Both parties, at the time of the contract, knew Rector had no means of compelling Post to pay the money to government within the three years. The failure of Post to pay the money within the three years, was an event the parties provided against.
We cannot say, that in this, the time when, as Well as the thing to be done, are not equally material. We will now inquire if Price, by any act of his, has waived the time, and showed a disposition to go on with the agreement. The only evidence on this point is,' that Price paid part of the Surveyor’s fees for laying off the town on the first plan-. This, of itself) is no waiver of the time 5 it only shows, Price at that time expected the contract to be earned into effect; and this payment was made long before the time had expired.-
It is said, Price was let into the enjoyment of the land, and that this is a waiver of the time. There is' no evidence that Price was in the enjoyment, of did any act that was equivalent thereto, We cannot see, therefore, how there was any waiver of the time, with respect to this matter.
As to the third point, shall Price be compelled to take the 62 acres, to which Rector had title ?
The rule of law on this point appears to be, that, When an estate is sold in lots or separate parcels, to some of which the vendor can make title, and as to some he cannot, the purchaser shall take those to which title can be made, because each lot constitutes a separate sale : see Sug. L. V., 209 and if the lots are so complicated with the others, a decree pro tanto will not be made, Apply this rule to the case before the Court. Price purchased 476 acres, all together, and Rector could only make a title to 62 acres, and the whole constituted only one purchase; and we cannot say ihe'62 acres were the main object of the purchase, and that lands of equal value in the neighborhood would do as well: see Sug. L. V., 216. We are, therefore, of opinion, there can be no decree pro tanto.
This Court is also of opinion, that the complainant has been guilty of such negligence, that he is not entitled to the relief in a Court of Equity.
It has been insisted on the part of Price, that tire contract ought tobe entirely rescinded in his behalf. The circumstances of. the case will not warrant that decree.
It is furthermore the opinion of this Court, that Rector’s executors pay to said Price, the sum of one thousand dolíais, with interest at the rate of six per cent, per annum, from the 21st day of June, in the year 1816, till paid; and that said executors do fuither pay to said Price, the value of the five arpents of land adjoining St. Louis, and also the value of the lot of land in St. Louis, which said three items constituted part of the consideration which Price gave to Rector for the purchase, which value is to he referred to the 21st day of June, in the year 1816, with interest thereon, at the rate of sik per cent, per annum till paid ; which value is to he ássessed by a jury, or by this Court, if a jury is not required; and that the injunction in this case be perpetual, as to all hut the aforesaid sums, and as to the aforesaid sums, that it be dissolved; and that, as to the island tract, and the 1600 acre tract in the county oí Howard, the decree in this case he without prejudice.
*270 Jones, J,
A majority of the Court having, in the opinion delivered hy them, given a state* ment of the proceedings in the ease, I think it unnecessary for me to take any further notice of them, than merely to observe, that this was a hill filed hy the complainant, praying for the specific performance of an agreement between the parties, for the sale of certain lands in the State of Illinois, which Rector had given his bond, under a penalty, to convey to Price, at a day long since passed, but before which, patents were to issue from the United States. On this bond, Price had brought an action at law against Rector, and recovered judgment for the penalty. It further appears, that Price had conveyed' to Rector a tract of 1600 arpents of land in Howard county, for the sum of $4,800, and executed his bond to make a good title, and to convey to him a tract of 350 acres of land, situate in an island in the Mississippi river, in the penalty of $5,600 ; the title to which two tracts, Price, by his answer, admitted he could not make, and offering to defalk or set off the said sum of $4,800, and also the sum of $2,800, the true consideration for the island tract, from the judgment recovered by Price against Rector.
It also appears, that subsequent to the obtaining of the judgment at law, by Price against Rector, and before the filing of the supplemental bill, a patent had been issued for the Illinois tract, which Rector was to convey to Price, and that Rector had then tendered to Price a conveyance thereof, duly executed, which Price refused to accept of, alledging, that the time in which this patent was, hy the condition of the bond, to have been issued, was material to him ; so that, the first and principal question in the cause, rests upon this point, viz : the materiality of time.
A number of decisions, as well of the American as of the English Courts, have been cited by each of the parties, as to the various circumstances, in which time was, or was not deemed material j and, as, from all the cited cases, it is-evident to me, that the Courts decided on each of these according to their various-circumstances and merits, I shall examine into those attendant on the cause before the Court»
Had it rested entirely on the bond from Rector to Price, for the conveyance of the tract of land in the Illinois, my opinion would be that time was in nowise material, as it does no,t appear from the testimony in the cause, or otherwise, that Price sustained any loss, damage or injury, by reason of the patents not having been issued by the time specified in the condition of the bond. Rut as, in so doing, Price would he left liable to-Rec-tor, on his covenant and bond, for the conveyance of the tract in Howard county and the- island tract, I think that, for the purpose of doing complete justice-between, the parties, lime ought to be considered as somewhat material in the decision of the case. Material, however, as I consider it to he, it is not my opinion, that the contract should be entirely rescinded, or a specific performance in toio decreed.. On the- contrary, I think such a decree ought to be made, as will be equitable between the parties-» This can be- done by decreeing that Price shall retain and have conveyed to. him such a portion of the- 476 acre- tract in the Illinois, which he agreed to purchase of Rector, at the sum of $4,300, which was paid hy the former to. the latter at the time of the execution of the bond, as bears to the sum of $11,900, the agreed consideration for the whole of that tract; and that Rector should retain the balance thereof, in lieu and in full satisfaction of the two tracts which Price has entirely failed to make a. title to. This may be objected to, on the-ground that Price *271 ought not to be obliged to take an undivided interest or share in that tract; but this objection will, in my opinion, vanish, when it is considered that the 476 acre tract, which Price bought of Rector, was only an undivided third part or share of a larger tract which Rector held at the time of the contract. Such a decree would not, it is true, place the parties exactly in the situation they were in, (nor, in my opinion, can any one be formed as will place them in that situation,) but it will place them as nearly so as the equitable circumstances of the case will admit of. The apparent object of the parties seem to have been a mutual speculation; that, on the part of Rector, on the value of the property he was to receive of Price; and that, on the part of Price, his being interested in a large town, or city, which was to be laid out on the tract agreed to be conveyed to him, from the sale of lots, wherein great expectations of large profits were contemplated.
But these expectations not having bee.n realized, and the' bargain on that account being thought a losing one, Price seeks for a rescinding of the contract, as to this tract of land, and insists on the advantage he has obtained at law, by a breach of the. condition of the bond. Had the reverse been the case, and the speculation in the sale of lots turned out to have been such an advantageous one as was then expected, it cannot be believed that any complaints would have been made, or action brought on the bond, on account of the patents not having issued in time. But if, on the contrary, Rector would rather have paid the penalty of his bond than make his conveyance, no one can doubt but that Price would, in that case, have filed his bill to compel Rector to make such conveyance, which would.be decreed accordingly.
It has been contended that a party, seeking to be relieved from the penalty of his bond, for a breach in the condition, ought to show not only that the other party may he placed in statu quo, but that he was anxious and diligent to perform his contract ; and that, although he might have been prevented from so doing by obstacles which he could not remove, it would not avail him any thing. I readily admit that due diligence ought to be made use of by the party seeking relief; hut whether Rector evinced any such diligence, must be collected from the proof in the cause, which, to me, are satisfactory that he did. Prom Col. Post’s testimony it appears that Rector frequently, before the bond became forfeited, applied to him to take the proper steps to have the patent issued, offering to pay and advance that part of the instalments due to the government, which Rector, by his agreement with Post, was to make ; and as a further proof of his diligence im doing all that he could, it is aliedged in the bill and admitted in the answer, that Rector, on the day specified in the condition of the bond, for the issuing of the patent, executed a conveyance, with covenant of general warranty, for the lands, and tendered the same to Price, who refused to. accept of it. But I cannot agree that obstacles, which Rector could not prevent or remove, are not, in equity, a sufficient excuse for not complying with the condition of his bond on the given day.
Both the parties, when the contract was entered into, knew the state of the title ; that it was to come .from Col. Post,- (from whom Rector purchased,) who, having entered the land in the United States’ Land Office, and paid the first instalment, had four years to make payment of the three other instalments; the last, subsequent to. the three years expressed in the condition of the bond from Rector, for the issuing of the patent. As, therefore, Price knew that the completion of the title depended on ' Post’s making payments to the government, I do not conceive that a Court of Equity-ought (on account of Post’s default in making payment, and which Rector could: *272 have no means of compelling him to make at an earlier period,.) to refuse granting some relief in the premises; and the more especially so as Post, in his deposition,says that the failure in procuring the patent in time, was to he attributed entirely to him, Post, and not to Rector.
If it were incumbent on a party, seeking relief from a penalty, to show that the other party may be placed in statu quo, few indeed would be the cases where any relief could be obtained; and it is but seldom that a Court of Chancery ever can, by its decree, place the parties in that situation. Where, however, the parties cannot be placed in statu quo, a Court of Equity will endeavor to put them as nearly so as the circumstances of the case will admit of.
In this case it is impossible to do so, as no proof, nor, indeed, allegations, have been made as to any loss or damage which Rector may have sustained by the failure on the part of Price, in making a title to the tract in Howard county, and the island tract; decreeing, therefore, that Rector should pay to Price the value of the mound tract and the lot in town, without, at the same time, decreeing that'Price' should pay to Rector the value of the tract in Howard county, and the island tract, Would not in my opinion, be doing either justice to the parties, nor placing them in statu quo j the one will have his damages assessed to him, but the other will not.
An important inquiry in this cause is, whether Price was ever in possession of the tract sold him; for it' he was, it will form an additional equity in favor of the complainant. The evidence on t&is point is by no means explicit, but, in my opinion, is sufficiently so to show, that Price was in such possession, at least from the time of the survey made by Mr. Brown, in the fall of 1816. He was employed by Rector,on behalf of a large company, to lay off the town on the first plan ; and that Price, as one of the company, paid his proportion of the expenses. He must, therefore, have then considered himself as the owner and possessor of that part of it which had been laid off for him ; and that he considered himself as such, and in full possession, is further evinced by other proofs, which tend' to show, that after his share was so laid off, he found great fault with- some of the- lots assigned to him, on account of tlioir being broken with gullies, and sometimes overflowed by the river Ohio ; and-proposed to Rector to exchange those lots for others, which he, Rector, owned, and which were not liable to these objections ; but which proposal was not acceded to ¿¡ Price wanting an equal number of lots, and Rector refusing to give any more than lots of equal value. If Price did not know what particular lots he owned, and was not then in possession, he could not have wished to have exchanged some of them for others.
According to the more modern decisions, it is ruled, that where a contracting party is not guilty of gross negligence, a Court of Equity will fend its aid to the comple-tion of the contract, although the time for fulfilling of it had elapsed : Fordice v. Ford, 4 Bro. C. C. 494. And as to neglect or delay, in making out a title at the times specified in contracts, it may, as expressed by Sugden, in his Law of Vendors, p. 249, be laid down as a general proposition, that a delay, accounted for on this ground, will not prevent a specific performance being decreed, where the time fixed upon far completing the' Contract, is not material. Indeed, where time is not material, and the title' is bad, but the defect can be cured, if the vendee is unwilling: to stay, the' vendor should file a bill in equity to enforce the performance of the contract : 6 Vez. Sun. 655, Jenkins v. Hill; 10 Vez. Jun. 315, Matlock v. Buller; for it is sufficient,-if the party entering, into articles1 to sell, has a good title at the time of *273 the decree ; the discretion of the Court being in all these cases to enquire, whether the seller can, not whether he could, malee a title at the time of the agreement. This principle was followed in a case of frequent reference, Langford v. Pitt, 2 P. Wms. 629, and in a late case, Wynn n. Morgan, 7 Vez. Jun. 202. The vendor, at the time he filed a bill for specific performance, had only a term of years, in the estate of which he had articled to sell the fee simple, and after the bill filed, procured the fee by means of an act of parliament; and as the day on which the contract was to be carried into execution, was not material, a specific performance was decreed. In an early case, 2 P. Wms. 631, Lord Starmont v. Sir Thomas Moore, the same doctrine is laid down. In that case, the vendor could not make a title, the reversion in fee being in the crown, and yet the Court indulged him with time, more than once, for getting in the title from the crown, which could not be effected without an act of parliament, to be obtained the following sessions ; however, it was at length procured, and the vendee decreed to be the purchaser.
No proof having been adduced, that Price suffered any loss, damage, or injury, on account of the patents not having been issued before the time specified in the condition of the bond, it became immaterial at what time it did really issue, so as it was before a decree passed. Price was in possession, and could, from aught that appears to the contrary, have disposed of his lots as advantageously, as well before as subsequent to the issuing of the patent; which is additional reason with me, that a specific execution should be decreed, of so much of the contract, as from the equitable circumstances of the whole case, ought to be carried into effect. This, in my opinion, can be no better effected, than by decreeing, that Price should take and retain so much of the Illinois tract of 476 acres, sold to him by Rector, at the sum of §4300, (being the amount total, as well by the cash paid down, as the stipulated value of the mound tract and lot in St. Louis,) bears to the sum of $11,900, the value agreed upon for the Illinois tract; that Rector should hold and retain the remainder of that tract, in full satisfaction of the two tracts which Price sold Rector, and to which he can make no title; that Rector, orhis heirs, should re-convey to Price all their right to the Howard county tract, of 1600 arpents, and deliver up to be can-celled, any securities which Price may have given Rector, for the conveyance of the Island tract. Such a decree will, in my opinion, be a just and equitable one between the parties; but as a majority of the Court think otherwise, their opinion must prevail, and the injunction be perpetuated, in part, and dissolved for the residue, conformably to the opinion of such majority of the Court.
The costs, in the action at law, brought by Price v. Rector, should, I think, be paid by Rector; and those in tne action at law, brought by Rector v. Price, should De paid by Price. The costs in equity, in my opinion, ought to be paid by the parties, in equal proportions. ■ Rector ought not to pay them wholly, as ho was forced into equity, to be relieved from the judgment against him at law, which, at this time, amounts to upwards of $32,000.