---

Jᴇʀᴇᴍɪᴀʜ Kɪɴɴᴇʏ,

*vs.*

Nᴇʜᴇᴍɪᴀʜ Rᴇᴅᴅᴇɴ ᴀɴᴅ Mᴇꜱʜᴀᴄʜ Eʟʟɪᴏᴛᴛ.

*Sussex, March T.* 1838.

A party, who by his own negligence or default has prevented or unreasonably delayed the full execution of a contract for the sale of lands, will not be relieved by a decree for specific performance. This principle applies to a contract though it be reduced to writing ; — *a fortiori* to a parol contract sought to be enforced on the ground of part performance.

The ground upon which Equity enforces a parol contract, part performed, is the prevention of fraud upon the party by whom there has been a part performance. To entitle such a party to relief it must appear that he will, in consequence of the part performance, suffer detriment, unless relieved, and that he has been himself in no default.

A vendee, under a parol contract for the sale of lands, was let into possession and permitted to cut timber upon the premises sold ; the vendor's title deed was delivered to a conveyancer selected to prepare a conveyance of the premises, and the tenant was referred to the vendee as the person authorized to let the premises for the ensuing year. The vendee withdrew the vendor's title deed from the conveyancer and neglected, on request, to return it or to proceed to the full execution of

the contract; also he neglected to assign to the vendor a judgment which was to be taken in part payment of the purchase money, or to pay any part of the purchase money. Under these circumstances the vendor resold the premises and conveyed them to another purchaser. Bill by the original vendee, for a specific performance, dismissed.

BILL IN EQUITY FOR SPECIFIC PERFORMANCE OF A PAROL CONTRACT FOR THE CONVEYANCE OF LANDS.—The defendant, Nehemiah Redden, held by purchase at Sheriff's sale under an execution against William J. Mitchell, the said Mitchell's undivided share of the intestate real estate of his deceased father, Nathaniel Mitchell, situated in Sussex County. The bill alleged that Redden had, in the month of April 1836, entered into a parol contract to sell and convey said share to the complainant; in consideration whereof the complainant was to pay the expense which Redden had incurred on account of said share, with interest from the date of the purchase of Mitchell's share; Redden agreeing to accept, in part payment, the assignment of a judgment held by the complainant against Taylor and ·Short for $321.00, and also to account to the complainant for the rents and profits which he had received from the lands. The bill further alleged that, in part performance of the contract, the complainant was let into possession of the lands, Redden having previously held the same in possession and accounted with the heirs at law of Nathaniel Mitchell, deceased, who were entitled to the other shares, for the rents and profits; further, that the tenant of the lands was directed by Redden to bargain with the complainant for the future renting of the premises; that the complainant, as the purchaser and with Redden's assent, proceeded to cut timber on the same; that at the time of the contract Cyrus Windsor, a conveyancer, was selected to prepare a deed for the conveyance of the premises to the complainant and the title papers of Redden were for that purpose delivered to Windsor. The complainant alleged that, after the making of the contract to

convey to him the said undivided share of real estate the
defendant, Redden, had sold and conveyed the same to the
other defendant, Meshach Elliott, thereby disabling him-
self from conveying said share to the complainant; that
the defendant, Elliott, after the purchase of said undi-
vided share, had, as assignee thereof, accepted the intes-
tate real estate in the Orphans Court, at the valuation
thereof—said share being entitled to the right of accept-
ance; that the defendant, Elliott, still held the said intes-
tate real estate. The bill alleged that he had purchased with
notice of the complainant's equity; and the bill, therefore,
prayed that the defendant, Elliott, should be decreed to
execute and deliver to the complainant the said undivided
share of real estate, so as specifically to perform the con-
tract of the defendant, Redden; the complainant tender-
ing himself ready to perform the contract on his part.

The answers of the defendants admitted the making
of the parol contract at the time and on the terms alleged
in the bill; also that Cyrus Windsor was at the time of
making the contract selected to prepare a deed pursuant
thereto, and that the title papers of Redden, consisting of
a deed for said undivided share, was for that purpose de-
livered to Windsor. The answers denied that the com-
plainant was let into possession of the premises; or that
he was permitted to cut timber thereon, although he had
cut some wood without authority. The answers alleged
as a defence that the complainant had himself prevented
the execution of the contract; that he took the Sheriff's
deed out of the possession of Windsor, the person chosen
to draw a conveyance pursuant to the contract, before there
had been time to prepare such conveyance, and had refus-
ed, at the request of the defendant, Redden, to return the
same; that the complainant had not assigned to Redden
the judgment held against Taylor and Short in part pay-
ment of the purchase money, nor had offered to do so un-
til the month of September, five months after the making

of the contract ; that the defendant, Redden, having done all in his power to carry the contract into effect soon after it was entered into, and being prevented from completing it by the negligence and delay of the complainant, was compelled to treat the contract as abandoned ; and, for the purpose of effecting a sale of his property, he had proceeded to dispose of the same at public auction, at which the defendant, Elliot, became the purchaser ; that such sale was advertised publicly for three or four weeks, and was generally known throughout the neighborhood ; yet that the complainant never tendered himself ready to comply with the terms of the contract on his part until long after the sale and conveyance to Elliot ; nor did the complainant make known to the defendant, Redden, that he objected to the sale until the evening of the day prior to the day of sale.

The answer of the defendant, Elliott, did not deny that he had purchased with a knowledge of the complainant's claim, but relied on the facts above set forth as amounting to a forfeiture of any right the complainant might originally have had.

The defendants also pleaded the statute which requires that a contract for the sale of any interest in lands shall be in writing ; and it was further insisted in the argument that by virtue of the proceedings for partition in the Orphans Court and the acceptance of the premises by Elliott, at the valuation thereof, the undivided share sold by Redden to the complainant had been extinguished ; that thereby the specific performance of the contract by a conveyance *in specie* of the subject matter of the contract was rendered impossible ; and that the Court had no power to decree a performance of it otherwise than strictly according to its terms.

The cause was put at issue and depositions taken on both sides. There was a considerable body of testimony

*7*

on the part of the complainant, tending to prove the making of the contract, the delivery of the deed to Windsor, the possession and acts of ownership on the part of the complainant and admissions by the defendant, Redden, of his having made the sale to complainant. The result of the proof, so far as it was material to the questions raised, is set forth in the opinion of the Chancellor.

The cause came before the Chancellor, at the March T. 1838, for hearing upon the bill, answers, exhibits and depositions.

*C. G. Ridgely*, for the complainant.

*R. Frame*, for the defendants.

JOHNS, JR., CHANCELLOR.—It appears from the bill, answers, and proofs in this cause that the defendant, in the month of April 1836, entered into a parol agreement to sell the land to complainant for what he had paid for it at Sheriff's sale and the costs of conveyance, and also to refund the rents received. And it further appears that the parties selected the person who was to draw the deed in a few days, as by the agreement of both in his presence.

In part payment of the consideration money the defendant agreed to take an assignment of a judgment against Taylor and Short for $321; and the rents and profits received by the defendant for his share of the land were to be repaid to the vendee. Soon after the verbal agreement the defendant, considering that he had made sale of the premises, allowed complainant to cut timber, and directed the tenant to bargain with complainant about the future renting of the property; he also delivered to Windsor the Sheriff's deed, that he might draw the deed, as agreed upon by both parties, in a few days. Under this state of things, and the vendor having done all he could to execute the

agreement, and having placed his property out of his control for the benefit of the complainant, it appears that the vendee, the complainant in this cause, without the consent of the vendor, took the Sheriff's deed out of the possession of Windsor, the person in whose hands it had been placed for the purpose of drawing the deed, and thus prevented the deed being prepared in the time agreed upon by the parties; and he further refused to return it, when required at the instance of the defendant. In addition to this interference on the part of the present complainant, who is now seeking a specific performance, it does not appear that the judgment which was to have been assigned as part payment of the consideration money was assigned, or that any offer was ever made to assign the same until sometime in the month of September, nearly five months after the contract; during all which time it remained under the control, as it yet does, of the complainant. The defendant, after having done all in his power to carry into effect the agreement soon after it was entered into, and being, as he alleges, prevented from completing the same by the delay and negligence of the complainant, was compelled to treat the contract as abandoned; and, for the purpose of effecting an actual sale of his property, he proceeded to dispose of the same at public auction. It appears that the sale was advertised publicly for three or four weeks; and notwithstanding it was notorious and well-known to every body, yet the complainant, according to his own showing, never tendered himself ready to comply with all the terms of the contract until long after the defendant had, pursuant to the public advertisement, sold and conveyed the premises to another person; nor did he even make known to the defendant that he objected to the sale until the evening of the day prior to the day of sale.

The defendants, in their answer, have relied on the delay and negligence of the complainant as exonerating them from all obligation to perform the contract. They also

insist on the subsequent proceedings in the Orphans Court as having such an effect as to prevent a decree for a specific performance. I have considered this case, and from the best reflection I have been able to bestow upon it, I cannot discover any principle arising out of the facts that will warrant a decree for a specific performance. I shall not examine the latter ground of defence, as I think the decision can be placed, with more propriety and satisfaction, upon the intrinsic merits of the case. The complainant appears to rest his right to the decree of specific performance principally upon the fact that possession was delivered. I assent to the well settled rule that the delivery of possession, pursuant to and in part execution of a parol contract for the sale of land, does take the case out of the statute; but it does not therefore follow, as a necessary consequence, that this Court will decree a specific performance.

In all contracts the time of execution is an important consideration. When reduced to writing it is generally expressed, and if credit is to be given for the consideration money it is apparent on the face of the contract; but in parol contracts it must be, as the contract itself, the subject of parol proof in cases out of the statute.

In the contract, as stated in complainant's bill, it is not alleged that defendant agreed that complainant should have time. Hence, in the case as presented, it does appear that the defendant was entitled to the immediate transfer of the judgment and to the payment of the balance; and, from the proof in the cause, it was not the intention of the parties that the vendor should part with the possession of his land and be kept out of the value of it longer than the few days which might be necessary for the scrivener to draw the deed; nor, under the contract as stated in the bill, can it be considered that the execution of the deed was to precede the payment of the consideration money.

But, upon this we are not left to inference or conjecture. The deed, which has been drawn by complainant and exhibited as part of his case in evidence, shows what was the understanding of the complainant himself upon this subject. In the body of it is the receipt in full for the purchase money paid; and the conveyance is expressed to be in consideration of it as paid in full. This deed also discloses another material fact, and places beyond all doubt the manner in which the rents and profits were to be subsequently adjusted and settled by the parties. The express covenant for their future payment excludes the ground assumed by the complainant, as being the cause of delay, that they were to be ascertained and deducted out of the sum stipulated to be paid as the amount of the purchase money. Taking into consideration the deed, as exhibiting in writing the complainant's understanding of the contract, it does appear to me that all the difficulty he has encountered has resulted from his own delay and negligence. But the principle upon which a court of equity proceeds in enforcing the execution of parol contracts relative to the sale of lands, in cases of part performance, is founded upon the prevention of fraud; as in cases where the vendee has entered and made improvements, or paid a considerable part of the purchase money. In the case now under consideration the vendee has not, according to his own showing, made it appear that he has sustained any injury, nor has he lost the benefit of the contract except by his own default. From what does appear it is manifest that he has derived an advantage, and that at the expense and to the detriment of the defendant. He never paid one cent of the purchase money, and yet exercised acts of ownership over the property of the defendant by cutting and using the timber thereof for his own purposes; and this when he had prevented the deed being drawn, and still held the judgment, which ought to have been assigned, under his own control and subject to attachment, or to any

other legal application thereof, in discharge of his own debts.

The rule, as laid down and acknowledged in courts of equity, is that where the party who applies for a specific performance has omitted to execute his part of the contract by the time appointed for that purpose, without being able to assign any sufficient justification or excuse for his delay, there being nothing in the acts or conduct of the other party that amounts to an acquiescence in that delay, the Court will not compel a specific performance. *Newland on Cont.* 242; *Sug. on Vend.* 3d *Lond. Ed.* 268.

In the case of *Benedict v. Lynch,* 1 *Johns. Ch. Rep.* 370, Chancellor Kent reviewed the cases as to the effect of laches of the party seeking a specific performance; and in the case before him, although the contract was in writing and the purchaser had made improvements but no payments, he dismissed the bill. The Chancellor in that case very properly remarks, with respect to the rule I have stated, that "it appears to him to be founded in the soundest principles of policy and justice. Its tendency is to uphold good faith and punctuality in dealing. The notion that seems too much to prevail that a party may be utterly regardless of his stipulated payments, and that a Court of Chancery will almost at any time release him from the penalty of his gross negligence, is very injurious to good morals, to a lively sense of obligation, to the sanctity of contracts and to the character of this Court. It would be against all my impressions of the principles of equity to help those who show no equitable title to relief." In 1 *Ves. Sr.* 450, Lord Hardwicke lays down the rule on this subject, when he says that "it is the business of this Court to relieve against lapse of time in the performance of an agreement; and especially where the non-performance has not arisen by default of the party seeking to have a specific performance." So it was held in the case

of *Hayes v. Caryll* as early as 1702; 5 *Viner, p.* 538 *pl.* 18, that where one person has trifled or shown a backwardness in performing his part of the agreement equity will not decree a specific performance in his favor, especially if circumstances are altered. The cases of *Spurrier v. Hancock* and of *Harrington v. Wheeler,* 4 *Ves. Jr.* 667–686, were on bills filed by the purchaser for a specific performance; and in the latter case he had paid part of the purchase money; but the bill, in each case, was dismissed on account of his laches and unreasonable delay. The observation of the Master of the Rolls, in *Milward v. Thanot,* 5 *Ves. Jr.* 720 *n.* is very emphatic on this subject. He observed that Lord Kenyon was the first who set himself against the idea that had prevailed, that, when an agreement was entered into, either party might come at any time; and that it was then perfectly known that a party cannot call upon a court of equity for a specific performance unless he had shown himself ready, desirous, prompt and eager. *Guest v. Homfray,* 5 *Ves. Jr.* 818, is another strong case on the point. Specific performance was refused on account of the laches of the complainant, who was the vendor. There, the purchaser had been put into possession when the contract was made; but the question was, as the Court said, whether the complainant had done enough to show that he took all the pains he could to be ready to carry the agreement into effect; and, as it did not appear that he had done all he ought to have done, though the delay was but three months and the complainant had met with an unwilling purchaser who meant to get rid of the contract if he could, the bill was dismissed.

In *Hatch v. Cobb,* 4 *Johns, Ch. Rep.* 559, the bill was for a specific performance of a contract on the part of the defendant to sell land. It appeared that the complainant had made default in the payments which, by the contract, were made a condition precedent to the conveyance; that the defendant had accepted one small payment subsequent

to such default, but that about six months thereafter defendant repeatedly called for payment and gave notice that if the complainant did not pay him he should be obliged to part with his interest in the land agreed to be conveyed. No payment being made he assigned over his right to a third person, and the complainant, with a knowledge of that fact, made a tender of the balance due on the contract and filed his bill for a specific performance of the contract, or for a compensation in damages for the payment he had already made and the improvements he had put upon the land. The complainant, subsequently to his default in payment, had confessed a judgment to a third person for $1000, to cover his property. In this case Chancellor Kent, in delivering his opinion, declares that a specific performance cannot be decreed. The defendant had fairly disabled himself before the suit was brought, and this was known to the complainant. He was not bound to wait any longer on the complainant, but had a clear right to exact immediate payment, or else to part with his interest in the land to another, in order to meet his own convenience or necessities. If the defendant had not parted with his interest before the filing of the bill, it might even then have been a point deserving of consideration whether the complainant was entitled to assistance, since no accident, mistake or fraud had intervened to prevent the performance of the contract on his part; and after indulgence and considerable subsequent delay he had twice been required to make payment and had omitted to do so. The acquiescence in his default or the waiver of it by the defendant had terminated, before the assignment, by these calls for payment. The bill was dismissed.

That the laches of the vendee will entitle the vendor to treat the contract of sale as rescinded or abandoned was decided by the case of *Ballard v. Walker*, 3 *Johns. Cases*, 60, where the vendee suffered four .years to elapse before he offered to fulfill the agreement on his part, and

in the meantime the vendor had sold the land to another.
The Supreme Court considered the contract of sale as re-
scinded or abandoned and, in an action brought by the
vendee to recover damages for the non performance, gave
judgment for the defendant.    The cases, in which it was
formerly doubted whether a court of equity could refuse
to decree a specific performance on account of the laches
of the party seeking it, all arose on written contract ; but
the decisions I have adverted to have settled the question.
If these contracts in writing will not be enforced, where
there has been delay or laches, there appears to be much
stronger reason in whithholding the aid of this Court,
under similar circumstances, when the agreement is by
parol.    With respect to the latter it is always the exercise
of a discretionary power ; and unless the equity of the
complainant is clear and his conduct such as to satisfy the
Court that he has fairly, punctually and fully performed, in
all things, his part, he cannot be entitled to relief, and his
bill must be dismissed.

It has been attempted, in the present case, to account
for the delay in drawing the deed, and to prove by the
testimony of one witness the assent of the defendant sub-
sequently to the original agreement.    This cannot prevail
against the oath of the defendant, confirmed by the cir-
cumstances of the case and the testimony of Mr. Windsor,
to the contrary ; nor, if true, would it follow from thence
that the vendor had agreed to the delay in payment, or to
deprive himself of the use and control of the judgment
which was to have been assigned or of the benefit to be
derived from the payment of the purchase money.    Hav-
ing parted with the possession of his land, according to
the terms of his contract, he was entitled to receive and
enjoy its equivalent.    The conduct of the complainant in
so long neglecting to prepare the deed, but especially his
entire neglect to pay any part of the consideration, while
according to his own allegation he was deriving advan-

tages from the use and possession of the defendant's property, all concur in satisfying me that the non performance of the alleged contract resulted from the neglect and delay of the complainant ; and this, under the circumstances of the case, appears to me to have authorized the defendant to treat the contract as abandoned, and to adopt the course he did for the purpose of effecting a sale of his property. The complainant's bill must, therefore, be dismissed with costs.