Brookenbrouch, J.
The question is, whether Payne was entitled to a specific execution of the agreement. He purchased the land at public auction, and persuaded Graves the trustee, and Wright the debtor, to put him in possession under his purchase. He steadily refused, for many years, what he now asks for, a deed from the trustee with special warranty, under the pretext that lie was entitled to a covenant of general warranty from the debtor. He refused to pay the purchase money of the land, over and above the debt due to himself and the debts he had paid for Wright, and defeated the action of the trustee for the purchase money, on the ground that the agreement for the purchase of the land, being merely verbal, was void by the statute of frauds: and, after the lapse of more than thirteen years from the purchase, and after throwing every obstacle in the way of the trustee’s recovering the land in ejectment, he *566 having kept both land and money, now asks the court to , , ,, , . compel tne other party specifically to execute this contract. So far from shewing an anxiety on his part to execute the contract, he has evinced the most obstinate determination not to execute his part of the agreement; and it is with an ill grace that he now asks the court to compel the other party to execute his .part of it.
The next question to be considered is, whether, in the state of the pleadings, the chancellor did right in directing an account to be taken of the rents and profits of the land, and in decreeing the balance found due by the commissioner against the plaintiff?
The plaintiff had purchased and obtained possession of the defendant’s land, and refused to pay him for it. The defendant sued him at law for the purchase money, and the purchaser defeated the action on the ground before mentioned. The defendant then brought ejectment, and after being twice defeated, at length, in the third suit, and after many years delay, obtained a verdict and a judgment, to recover back the land. But the plaintiff was not satisfied. Still holding the land, and the greater part of the purchase money, he brought the defendant into equity, and injoined him from- enforcing his judgment in ejectment, and from bringing a suit at law for the rents and profits. He is defeated in equity; he fails in obtaining a decree for the conveyance of- the land, and he now contends, that (although he has kept him in the court of equity for ten years more), all that this court can do, is to let loose the judgment in ejectment, and send back the defendant to a court of law to institute a new suit for rents and profits. I do not see the necessity for this course. Matters of account constitute a part of the jurisdiction of the court of equity; and it is a well established principle, that when that cqurt has once obtained possession of a subject, it will do complete justice by disposing pf the whole subject. It would be the most crying injustice to send the defendant back to a court of law, after he has been forced into a court of equity, and prevented by the plaintiff himself from prosecuting his suit at law for *567 the long space of ten years, and to drive him out too, when • , the account which he asks for, is within the ordinary jurisdiction of the court.
It is alleged, however, that, admitting the subject to be within the jurisdiction of the court, the defendant ought to have filed his cross bill. I do not think so. The cross bill is a mode of defence, allowed to a party, to enable him to state his case more to his advantage than he could by answer, and need not be resorted to, unless a complete decree cannot be made without it. 1 Harr. Ch. Prac. 135. Mitf. Plead. 76. Coop. Eq. Plead. 85. Here, the defendant stands in no need of it; all that he asks for by his answer, is an account of rents and profits to be rendered by the plaintiff, and this simple requisition may be made in very few words. A complete deciee too can be made without filing the cross hill, and if the matter is so put in issue as that the opposite party can have an opportunity of defending himself, and of rendering a just account without it, there cannot be any necessity for incurring the expense and trouble of a cross hill, lief, us see then how this matter stands upon the pleadings between the parties.
A judgment in ejectment had been rendered in behalf of Graves, trustee for Wright, against Payne. The object of the bill was to restrain Graves from enforcing this judgment, and from bringing an action against him for the mesno profits, and to obtain a decree for a specific execution of the contract, by requiring the trustee to convey it with special warranty to him. The hill alleged, that Payne had bid two dollars per acre for the land, and had determined to give no more, hut that Wright had privately promised him, that if he would go further, he would give him a general warranty, and that in consequence of that promise, he bad the further sum of 5s. 11d. per acre. He, therefore, prays that he shouldhe relieved from the payment of that additional price; or, in the event that he should hereafter lose the land, he prays that he may have security, that the whole of the purchase money shall he refunded to him. That purchase money consisted, in one aspect, of the price of the laud at 12s. per acre; in the *568 other, at 17s. 11d. per acre. He had not however, paid all of the purchase money. All that he could require to be refunded to him on losing the land, would be first, the debt and interest, for which he had bad a lien on the land by the deed of trust; and secondly, the amount of the sums which he alleged he had paid after the sale, at Wright’s request, to his other creditors; for these were all the sums he had paid towards the purchase money. The defendant Graves, in his answer, does not admit that those sums were paid by Payne, or that he was ever authorized by Wright to pay them, and calls for proof of those allegations. He thus joins issue on that matter of account. A good deal of proof was taken for the purpose of shewing the sums paid by Payne for Wright. Here, then, is a bill filed, not merely for a specific execution of a contract, but in the alternative of its not being decreed, for the refunding of certain sums of money which had been paid towards the purchase. On the hypothesis that Payne was not entitled to a specific execution, what was the chancellor to do with the alternative prayer? He must either act as commissioner himself, and decide at once how much was due to Payne, or he must refer the account, with the vouchers and evidences to support or oppose it, to a commissioner. He preferred the latter course, and I think rightly. Although the plaintiff did not by his bill demand an account of what was due to him, in totidem verbis, yet he demanded that which the chancellor properly decided would require an account to ascertain. Issue being joined on the plaintiff’s account, was it not right to listen to the application which the defendant Graves made in his answer, that the plaintiff should account for the rents and profits of the land which he had no right to hold ? Should not those rents and profits be set off against the amount due to Payne 7 I think so; for, surely, if it was right to direct the account to ascertain the debt due to the plaintiff, it was also right to authorize the defendant to shew how much the plaintiff was indebted to him.
When the case is fairly before the commissioner, the plaintiff has the same opportunity of defence against the set-off *569 broughi. forward by the defendant, that tlie defendant has . , . , , . .J against tlie account oí the plamlui.
The course here pursued is not witliout authority to support it. In tlie co.se of Parkhurst v. Van Cortlandt, 1 Johns. Ch. Rep. 274. chancellor Kent refused to execute the contract; and although the plaintiffs did not in their bill ask any relief on account of the improvements which they had put on tlie land, not looking to the alternative of losing it, yet the court directed an account to be taken between the parties, in which the plaintiffs were to be credited by a reasonable compensation lor beneficial and lasting improvements made by them on the land, and to be debited rvith the rent in arrear, and with reasonable rent for the time not agreed on by the parties.
In our case, the commissioner has reported a balance due from the plaintiff to the defendant. Was it right to render a decree for that balance in favor of the defendant ? I think it was. There are many cases in our own reports, in which it has been adjudged, that whore a bill is brought for an account, and a balance reported in favor of the defendant, the court will, decree in favor of the defendant for that balance. Hill & Braxton v. Southerland’s ex’ors, 1 Wash. 134. Fitzgerald &c. v. Jones, 1 Munf. 150. Todd v. Bowyer, 1 Munf. 447. This too is in conformity with the course of equity proceedings in England and Ireland, 1 Mad. Ch. Prac. 86. Bodkin v. Clancey, 1 Ball & Beatty 217. Nor can I doubt, that if on the report of the master in the case of Parkhurst v. Van Cortlandt, it had turned out, that tlie rents exceeded the value of tlie improvements, and that tlie balance was against the plaintiffs, the decree would have been rendered in favor of the defendant as the party entitled to the balance.
For these reasons, 1 am of opinion, that the chancellor did right in directing the accounts, and in decreeing in favor of the defendant. But there is an error in giving interest on the estimated rents and profits, and for this the decree should be reversed.
*570 Carr, J
This is a bill for the specific performance of a contract for the sale of land. Wright owed Payne £ 22. and gave him a deed of trust of land to secure it. Graves was the trustee. A part of the land was sold under the deed, and Payne became the purchaser, at a price much exceeding his debt. He got into possession, but refused to receive a proper deed from the trustee, and pay the balance of the purchase money. The trustee sued for the money, and Payne defeated the action by relying on the statute of frauds; thus disavowing the contract, but still holding the land. The trustee then brought ejectment. He was non-suited twice; and when at length, after ten or twelve years, he recovered judgment, this bill was filed for a specific performance, and to inhibit any suit for mesne profits. Wright in the meantime had died. The trustee answered, stating the facts; and, in the close of his answer, he insisted, that as Payne had abandoned and disavowed the contract, but still continued to hold the land, he was liable for rents and profits, and he prayed an account of them. Much evidence was taken. The chancellor ordered the accounts. The commissioner reported a considerable balance against Payne, charging interest on the rents and profits; and for this balance, the chancellor rendered a decree. We are all agreed, that this is no case for specific execution; and equally agreed, that this decree must be reversed: but as to the grounds of reversal, and the subsequent order to be taken, I have the misfortune to differ with my brethren; they approving, in the main, the decree in favor of the defendant, but reversing because interest is given on the rents and profits; I believing that,.from the nature of this bill, and upon the state of the pleadings, we can decree nothing to the defendant, but should simply dismiss the bill, and leave the parties to their legal remedies. I shall, as briefly as I can, state the.grounds of my opinion.
Let us first ascertain exactly, what sort of a bill this is. It is said, this is a bill, not merely for a specific performance of the contract, but (in the alternative of its not being decreed) for the refunding of certain sums of money, which *571 the plaintiff had paid towards the purchase; and we are asked if a specific execution is refused, what will the court do with the alternative prayer ? I answer, there is no such alternative prayer; no prayer whatever founded on the idea of a refusal of specific execution. The bill states the debt due from Wright; the deed of trust to secure it; the sale under the deed, and purchase by the plaintiff: that while the bidding was going on, the plaintiff having bidden 12s. -per acre, stopped, not meaning to go further, if he was to rely on the title which the trustee could make: that Wright then took him out, and told him, that if he would run the land up to something like its value, and it should fall on his hands, he would give him a deed with general warranty; and that upon this promise, he did run the land up, to 17s. 11d. per acre—5s. 11d. more than he would otherwise have given: that possession was given him: that the trustee tendered a deed, which he refused: that an ejectment had been brought, and judgment recovered against him. Then comes the prayer of the bill—that Graves may be restrained from all proceedings upon the judgment in ejectment, and from suing for the mesne profits; that he may be decreed to convey his right with special warranty to the plaintiff, in and to the 85 acres; and that the plaintiff may either be relieved from the payment of the 5s. 11d. per acre, which ho bad for the land, more than he would have bidden, but for the promise aforesaid of Wright; or that, if he should pay it, he may have security to have the whole purchase money refunded to him, in the event of his hereafter losing the land $*c. Now, I ask where is the prayer here, founded on the basis of a refusal to execute the contract ? It is true, an alternative is presented; but both branches of it, are predicated on the specific execution of the contract: he prays a decree for the land, either at 12.9. per acre, with special warranty, or at 17.9. lid. with security to have the whole purchase money refunded, in the event of his hereafter losing the land. The question, then, if the court refuse a specific execution, what will they do with the alternative prayer ? is founded on a mistake of the bill. There is no such prayer; *572 it is a bill, simply and purely, for a specific performance of the contract.
Again, it is argued, that if Payne had paid the purchase money, and filed his bill for a specific execution, the court though it should refuse such execution, would decree the repayment of the purchase money. Standing upon this hypothesis, it is next contended, that upon the same principle, the court in this case (though refusing specific execution) might decree to Payne, the debt for which he had a lien on the land; but against this debt, it is said, the defendant would have a just right to set-off the rents and profits of the land, while held by the plaintiff; and to settle these matters it would be necessary to order an account, by which both parties being converted into actors, it becomes the duty of the court, not only to extinguish the debt for which the plaintiff took his lien, but to decree to the defendant, whatever amount (beyond such extinction) may be reported in his favor. Thus, by the ingenious process of assuming a first position, and then piling inference upon inference, the conclusion is at length reached, that upon a bill purely for a specific execution, without a prayer for any other relief, the court (refusing the relief prayed) may, of its own motion, or at the instance of the defendant, order an account, and render a decree against the plaintiff for whatever sum the report may shew to be due. To this conclusion my mind cannot come: it seems to me to violate the best settled rules of practice and pleading.
The plaintiff states his case in his bill; by that case, he must stand or fall. The defendant may demur, plead or answer; but it is to the case made by the bill; he cannot change that case. When the plaintiff makes a case for specific execution of a contract for the purchase of land, the defendant may shew that he has no right to the decree prayed; but he cannot by answer convert this bill into a bill for an account, and thus entitle himself to a decree for money against the plaintiff. If he had thought his case entitled him to such decree, he should have filed a cross bill, and thus taking the character of an actor, and stating the facts *573 of his case, have called on the plaintiff to answer, and make up a proper issue for the court.
Authorities are relied on in support of the principle on which the decree is founded. Let us examine them. Clinan v. Cooke, 1 Sch. & Lef. 22. That was a bill filed for the specific execution of a written agreement for a lease of land. The chancellor considered the agreement too uncertain to be decreed, and dismissed the bill, but decreed to the plaintiffs 50 guineas, which had been paid in part of the purchase money of the lease. But the case differed most materially from this. The written agreement expressly stipulated, that in case of failure to deliver peaceable possession, the plaintiffs were to have legal interest on the money they had deposited; and the bill prayed a specific performance, and, in case it should appear, that the defendant had put it out of his power to make a lease according to the agreement, that he should be decreed to make compensation to the plaintiffs ; and the defendant in his answer, confessed the receipt of the money, and said he had offered to return it. Here we see, that the bill had a double aspect; seeking specific execution if to be had, but if not, that the money paid might be decreed back. This put the fact of the 50 guineas paid, fairly in issue; and that fact was confessed by the answer. This is surely very different from the case before us, where the bill was filed solely with a view to specific performance, putting nothing else in issue, and where the facts on which the decree is founded are stated in the answer,—not responsive, but making a new and distinct case for an account. The chancellor too, in Clinan v. Cooke, admits, that as a general rule, the bill should be dismissed where a specific execution is refused; though, under the special circumstances of that case, he decreed for the money paid. Watt v. Grove, 2 Sch. & Lef. 492. 513. is also relied on, as shewing, that in the case of a bill brought for a specific performance, the court dismissed the bill, ordered an account, and directed the plaintiff to be charged with the rents and profits received by him. In my apprehension, the opinion I hold in the present case, receives the strongest sanction and *574 illustration from that very case. Watt filed a bill against Grove, charging that he had become surety for him for £, 500. in consideration of the payment of which, and of £ 250. advanced to Grove, he did by letter agree to grant to Watt, a lease forever of Bohural park, upon terms stated; and the bill prayed a specific execution of this agreement. Now, if the defendant had rested simply upon an answer to this bill, and on the hearing of such bill and answer, the chancellor had dismissed the bill as to the specific execution, ordered an account, directed that the plaintiff should be charged with the rents and profits of the land, and, upon the return of the report, decreed a sum of money against the plaintiff, I freely admit that this would have been.a case in point to support the doctrine contended for. But such was not the fact. Grove answered, and filed a cross bill, in which, as well as in his answer, he charged Watt, who had been the agent and receiver of bis father and uncle on the estate, and whom he had continued in the same office, with a long series of frauds and impositions, upon his youth, inexperience and necessities, among which was the contract stated in the bill; and prayed, that the deeds, articles <fcc. evidencing the various contracts, might be set aside, cancelled, and declared null and void; and an account of all their transactions. Watt having at different times advanced him money, and having also under the contracts, occupied different tracts of land, the bill and cross bill (as usual) were heard together; and it was under these circumstances, and upon this state of the pleadings, that lord Redesdale set aside all the contracts, as fraudulent and void, and directed the master to take an account of all the transactions, crediting Watt by moneys, and charging him with rents and profits, and also dismissed with costs the bill for specific execution. Now, I insist, that this is a case directly in point as to the necessity, and the settled practice, of filing a cross bill, in such cases. It will be remarked, that Grove stated the facts of fraud, imposition &c. in his answer: but the counsel who practised before that distinguished judge, knew better than to rely on the answer of a defendant, for such a *575 decree as they wanted, and therefore filed a cross bill. If this had not been the usual and proper proceeding, wc should have heard some objection; for it must have added greatly to the costs; and if the end could have been as well attained by answer, the chancellor would have dismissed the cross hill as unnecessary, or, at least, have made the party pay the costs of it. The case of Parkhurst v. Van Cortlandt, 1 Johns. Ch. Rep. 274. is also relied on. There, the bill was for specific execution of a contract, on two grounds, 1. a written tnemorandum; 2. part performance. The chancellor did not think the case, on either ground, or both together, such as to justify a decree for specific execution. But he said, that as the defendant, by his memorandum in 1797, encouraged the plaintiffs to possess and improve the lot, under some vague assurance, that he would eventually, lease or sell to them, he ought now to avail himself of the benefit of their improvements, without making them compensation. With a view to this relief, he ordered an account of improvements ; and that the plaintiffs should be charged with rents &c. and that ail other questions in the meantime be reserved &c. It is to be remarked of this case, 1. that it is a mere interlocutory order, deciding nothing finally: 2. that it was made for the benefit of the plaintiff, and preparatory to a decree for his relief; not contemplating (as heve) a decree of money to a defendant, which has been done in no case that 1 know of, except bills for account, where each party is considered an actor: 3. that it seems to have been founded on the order made in Watt v. Grove, which I have shewn to he wholly different in this, that there a cross bill had been filed: but 4. upon appeal taken from this decision (so far as it may he so called) it was reversed, as may be seen 14 Johns. Rep. 15.* These cases then bring no aid to the doctrine contended, for.
After the chancellor determined, that the prayer for specific execution had no foundation, the ground for equitable interference was, in my opinion, gone. Suppose A. files a *576 bill, stating that R owes him 200 dollars due by bond, and had given a mortgage on land for the security of it, which mortgage was destroyed, but he prays to set it up, and have ^ foreclosed. B. answers, denying utterly, that he ever executed such mortgage; and alleging that A. owed him double the amount of the bond, and praying an account. A. produces no proof that the mortgage ever existed. Upon the hearing of such a case, should the court, after the sole ground of coming into equity (to set up and foreclose the mortgage) was taken away, continue to hold plea of the matter, direct an account, and if a balance were reported for the defendant, decree against the plaintiff for such balance ? If so, the decree here is right. But my opinion is, that the decree should be reversed, the injunction dissolved, and the bill dismissed, leaving the parties to their legal remedies. The judgment in ejectment would by this be let loose, and the party left free to sue for tire rents and profits; and in that suit Payne might set off the debt due him from Wright; or he might bring a separate suit for it.
Tucker, P.
Many objections have been made to this decree. There is but one which seems material; and for that it must be reversed and sent back to the court of chancery, where some of the irregularities complained of, may most properly be corrected.
The plaintiff having purchased the land of one Wright, his debtor, under a deed of trust at the price of 17s. 11d. per acre, sets up a verbal promise made by Wright, that he would give him a deed with general warranty (instead of leaving him to depend on such title as the trustee would make), provided he would bid up the land to the above price, instead of 12s. which, he says, was the most he meant to give for the trustee title. This promise is directly within the meaning of the statute of frauds, and the circumstances of the case exemplify, very strongly, the wisdom of its provisions. For the attempt is by a bill in 1824, to set up this agreement of 1811, after Wright’s death, upon the allegation of a private understanding between the parties, not re *577 duced to writing, and so imperfectly proved, to say the least, that the chancellor thought it not established. This private agreement too, purports to modify the terms of a public purchase, made at public outcry, in the presence of the country; which public sale itself was successfully assailed by the plaintiff (in an action brought against, him for the purchase money) as being void under the statute of frauds. Therefore, without deciding, how far it is competent to a party to defend himself under that statute, where ho does not plead it, or otherwise rely upon it (though in Vance v. Walker, 3 Hen. & Munf. 288. this was deemed admissible), yet in a case so circumstanced as this, we ought, I think, to follow the wise precaution of that statute, in rejecting the verbal agreement attempted to be set up.
To avoid the effect of the statute, however, it is alleged, that the appellant had possession, which was a sufficient part performance. But the possession which has this effect must be referrible to the agreement set up, as all the later authorities prove. Rowton v. Rowton, 1 Hen. & Munf. 92. Heth’s ex’or v. Wooldridge’s ex’or, 6 Rand. 605. Sugd. Law Tend. 83.* An agreement will not be considered as partly executed, unless the acts done are such as could be done with no other view or design, than to perform the agreement : and if it do not appear, but that the acts done might be done with other view's, the agreement will not be taken out of the statute ; 6 Rand. 610. Therefore, in Rowton v. Rowton, judge Roane held the possession not to be a part performance, because it was equally referrible to an estate for life or in fee. And in this case, the possession given by Wright and Graves, and accepted by Payne, is well satisfied by referring it to the purchase at the auction sale. There is nothing in the case to shew, that it was a possession in reference to the subsidiary private agreement 'wVhWright. On the contrary, it is evident that it was not surrendered to Payne in execution of that agreement, which rvas not at that time admitted by the parties.
*578 It is scarcely necessary, however, to press this point, as on , , , . other grounds trie case is unsustainable, b or it is a claim to a specific execution, after the purchaser has defeated the recovery of the purchase money by the statute of frauds, and after the most decided manifestations of a settled purpose to refuse to accept the only deed he had a right to expect. The principles upon -which specific execution will be decreed, have been too often settled to require to be again stated. Anthony v. Leftwich, 3 Rand. 238. Vail v. Nelson, 4 Rand. 478. Sugd. 279. 281. 13 Ves. 225. 1 Ball & Beat. 68. 1 Johns. Ch. Rep. 375. 4 Ves. 686. And if it be true, that the party who asks a specific performance, “ must shew himself ready, desirous, prompt and eager f if his application is to be rejected, where “ he permits a long time to elapse, without evincing a fixed marked intention to carry his contract into executionwhat shall be said of the case of this plaintiff, who, instead of demanding such a conveyance of the land as he appears to have been entitled to, pleads the statute of frauds against the recovery of the purchase money, refuses to receive a deed without a general warranty, to which he had no right, and baffles his vendor in two ejectments, instead of at once coming forward with his pretensions, and submitting them fairly to the decision of a court of equity? Such a case cannot be entitled to the countenance of this court. Indeed, we cannot decree a specific performance, without either reversing the judgment for the defendant whicli absolved him from the purchase money, or giving him the land without a consideration.
It is said, indeed, that the agreement to which he pleaded the statute was the purchase from Graves, not the purchase from Wright. But to me it is obvious, that, admitting Wrighfs promise, it was only an additional term of the purchase made at the auction sale. Put that sale out of the case, and where could Payne get his title ? It never was designed-to set that aside, and to dispense with a conveyance by the trustee. The object of Payne was to procure that, and to have a warranty also from Wright.
*579 It is objected, that as the bills were taken pro confesso against the Wrights, the decree in their favor- was wrong. I do not think so. The case was defended by Graves, and is in principle like Cartigue v. Raymond, 4 Leigh 579. Moreover, as the contracting party Wright was dead, and the widow and son probably knew nothing of the transaction (for it is not charged that they did), it is not a case resting upon the defendant’s discovery; and therefore the allegation cannot be considered as admitted, but must be proved, and a sufficient cause of action shewn to entitle the plaintiff to a decree. This has not been done.
The decree, however, is wrong in allowing interest on the rents, and in decreeing the balance thus created against the plaintiff. It must, therefore, be reversed, and sent back for further proceedings, with instructions to credit the annual rents against the principal and interest of the plaintiff’s demands, according to the usual course of the court, until the same shall be discharged ; and then the residue of the rents are to be decreed, but without interest, to be paid into court for the benefit of the representatives of the decedent Wright, when they shall have been ascertained by proper proceedings.
To this opinion I incline upon the two principles of equity, that when it takes jurisdiction of a matter, it will dispose of the whole subject, and that it delights in an end of litigation and in preventing a multiplicity of suits, I take it, that where a bill is filed to carry a contract into execution, the plaintiff having paid a portion of the purchase money, if the court refuses the specific execution on the ground of the statute of frauds, or otherwise, it may, and generally will, decree repayment of the purchase money to the plaintiff. Thus in Clinan v. Cooke, 1 Sch. & Lef. 22. where the plaintiff filed his bill for specific execution of an agreement for a lease, towards which he had paid 50 guineas, the court decreed, that though the bill must be dismissed as to the performance of the agreement for a lease (because within the statute of frauds), yet the plaintiff should have a decree for his 50 guineas and interest. And this too, uotwithstand *580 ing there was an express covenant in the agreement to refund it, on which the plaintiff might have had his action at law. So in Philips v. Thompson, 1 Johns. Ch. Rep. 132. a bill was filed to compel a performance of a parol contract concerning lands; which the court refused, but directed an issue of quantum damnificatus to assess the plaintiff’s damages, as he had sustained an injury, for which he ought to be compensated, and for which he had no remedy, or at best a doubtful and inadequate one, at law. And in Parkhurst v. Van Cortlandt, Id. 274. a bill having been filed for specific performance, which was refused, because the part performance proved was not deemed sufficient to take the case out of the statute, the court directed a reference to the master, to take and state an account between the parties, charging the plaintiff (who had had possession under the agreement) with rent during his possession, and crediting him with a reasonable allowance for the beneficial and lasting improvements made by him while he had possession of the land.
If, then, in the present case, Payne had paid the purchase money, I think we should be sustained in the position that it should be decreed to him. For a refusal to carry the contract into execution, in such a case as this, amounts to an annulling of the contract, and the court should replace the party in the condition in which he would have been had not the imperfect contract been made. See Ld. Pengall and Ross, 2 Eq. Ca. Abr. p. 46. pl. 13. where upon a bill for specific performance, though the relief asked was refused, the court decreed £ 100. which had been paid, to be refunded.* Now, I can perceive no essential difference between decreeing restitution of the purchase money paid, and decreeing to Payne his debt which was part of the consideration in the purchase, and for which he has a lien on this land. Why should he be turned round to a new bill to *581 compel the trustee to have a resale of the premises for the purpose of making his debt ? But. if Payne is entitled to a decree for his debt, does it not follow, that the defendants must be permitted to set-off the rents and profits, to the extent of discharging that debt? Is the defendant to bo turned round to his action of trespass for mesne profits, when in point of law, that action cannot be maintained, as Payne came into possession, not as a trespasser, but by consent? Nor, I presume, could he maintain assumpsit for use and occupation, since he took possession under a supposed purchase, which negatives an implied contract to pay rent as tenant; Kirtland v. Pounsett, 2 Taunt. 145. There is, in short, no mode of doing justice,-—complete justice,—between the parties, except in the court of equity.
Lastly, if an account be directed, and the balance is found in favor of the defendants, shall they not have a decree for it? I have shewn, I think, that the. account was properly directed. If so, then, as to that account, both parties were actors; and if so, the balance may be decreed to the defendant, if it appears to be in Iris favor. Indeed, it seems to me, that it would be most extraordinary, after taking the account, to allow just so much only as would pay the plaintiff’s debt, and then leave the defendant to his uncertain remedy for the residue.
For these reasons, I am of opinion to enter the decree I have suggested.
Career and Brooke, .7.
concurred. And a decree was entered, declaring, that there was no error in the decree of the court of chancery, in refusing to enforce the alleged parol agreement for a conveyance with general warranty, or to rebate 5s. 11d. per acre in the price of the land : nor was there any error in refusing a specific execution of the contract of sale as made by the trustee Graves, inasmuch as it was not asked, and seemed to have been disclaimed by the appellant: nor was there any error in decreeing an account, and that the rents and profits accruing during the appellant’s possession should be set-off against his demands against *582 Wright; the court being of opinion that it was not only proper that the whole controversy between the parties should have been settled, but that under the prayer of the bill, it was proper to have decreed him what was due him, which could only be ascertained by directing an account, and allowing such credits as the defendant could prove: but that there was error in allowing interest on the yearly rents; that these should have been credited as they accrued, against the principal and interest of the plaintiff’s demand, according to the usual course of the court in the adjustment of credits; and if a balance appeared due to the defendant, that balance ought to be decreed him; both because, upon well received principles, where an account is properly directed, both parties are actors,—and because, in this case, the answer prays an account of rents and profits,—and it would be unreasonable to turn the defendant round, after the delays occasioned by Payne, to a doubtful remedy at law. Therefore, the decree was reversed, and the cause remanded &c.

But it was not reversed on this point. The supreme court held, that the plaintiff was entitled to a specific execution.

Phil. edi. of 1820.

 In Sugd. 88. it is said, this case cannot be found in the register. I presume, however, it is not because it never was decided, but because the names or dates have been mistaken. Note by the judge.