Judge Hitchcock
delivered the opinion of the court :
So far as the facts of this case are concerned, there can be but little difficulty. The only controversy is, whether the complainant took possession of the premises before the tender made to him of his notes, and whether before that period he had made any lasting and valuable improvements.
The contract did not give him the right of possession in express terms or by implication; still, with the consent and acquiescence of the defendants, he might have taken possession ; and if, under such circumstances, improvements should be made which are lasting and valuable, it would seem to be equitable that a vendor, before he shall be permitted to rescind a contract of sale, should make compensation for such improvements. We have carefully *391 examined the evidence, and without recapitulating the testimony of the several witnesses, shall merely state the impression made upon our minds by that examination. There can be but little doubt that the complainant ^exercised some acts of ownership over the property after the contract, and before the tender referred to, but that he made any valuable improvements is not shown. Nor does it appear that he had any exclusive possession. The lot was vacant until after the period of the tender. There is no evidence that the defendants knew of the exercise of these acts of ownership, but the contrary is inferable from the circumstances that when they made the tender, they forbade the complainant to take possession. The only improvements of consequence which have been made upon the lot, is the erection of a small dwelling house, and the weight of evidence conclusively shows that this house was erected in the spring of 1833, during the absence of the complainant from Cleveland. The circumstance that it should have been .done at such a time is, to say the least of it, somewhat suspicious.
An opinion seems to have prevailed to a considerable extent, ithat in contracts for the purchase and sale of real estate, time is ■of little consequence. In the case of G-regson v. Biddle, cited in 7 Wes. 268, Lord Chancellor Thurlowis said to have intimated that .time could not be made of the essence of the contract, even by a positive stipulation of the parties. This opinion, that time constitutes no part of the essence of the contract, has been strengthened probably in the northern part of the State of Ohio, and especially ■on the Connecticut Beserve, by the peculiar situation of the country, .and the manner in which lands have been sold. This tract of country was originally conveyed by the State of Connecticut to purchasers from the state, comparatively few in number. In its early settlement, these purchasers, who have been usually denominated original .proprietors, sold out small tracts to actual settlers, .and generally upon credit. Lands, thus sold, were not, however, generally conveyed by deed, but the purchaser took a contract, in which the terms and.times of payment were specified, and in which it was stipulated, that upon payments being made, the vendee should be entitled to a deed. Under these contracts, possession was generally taken with thq assent of the vendors, and large improvements made. As is frequently the case in now countries, most of these actual .settlers, if not absolutely poor, wore in but .moderate circumstances; consequently, payments were not made *392 according to the stipulations of their contracts. In most instances, these delays were acquiesced in by the original proprietors. It ^was their interest thus to acquiesce, for otherwise the country could not have been settled, and their lands must have remained a burden upon their hands. So uniformly has this been the case, that scarce an instance can be found where an original proprietor has attempted to defeat a vendee of his purchase, merely upon the ground that punctual payment had not been made. Consequently, it has been pretty generally supposed that failure to pay punctually on the part of the vendee, could not operate to exonerate the vendor of his liability, and that the time of payment specified in the contract was of little consequence. I am not aware, however, that the decisions of our courts, when carefully examined, will be found to have favored this opinion. Whatever may have been the opinion of Lord Chancellor Thurlow, all the modern cases go to show that time maybe made of the essence of a contract. This subject is fully examined in the case of Benedict v. Lynch, 1 Johns. Ch. 370, in which Chancellor Kent comes to the conclusion that time may be made a part of the essence of the contract, if it is not so in all cases. On this subject, too, reference may be made to Sugden on Vendors, 9 ed. 441, and the cases there cited.
It seems to us that this is a reasonable principle. There is nothing in the character of contracts for the sale and purchase of lands, that places it in the power of either party to trifle with the other by violating a contract on his part, and then, at his own convenience, by offering to make compensation, compel a specific performance. In courts of law, time is considered as of the essence of all contracts, and courts of equity are as much bound to see that contracts are executed as courts of law. That man who would call upon a court of equity for a specific performance must, in the language of the books, show himself to have been “ ready, desirous, prompt, and eager.” If, therefore, a vendor or vendee wish to compel the other to observe a contract, he immediately makes his part of the agreement precedent; for he can not proceed against the other without an actual performance of the agreement on his part, or a tender and refusal. Sugden, 9 ed. 245. But although courts of equity are bound equally with courts of law to enforce contracts, still there are cases, and they are not unfrequont, where they will relieve against lapse of time, and decree specific performances. But this is owing rather to *the peculiar circumstances of each par *393 ticular case, than to the consideration that time is not of the essence of the contract.
In case there has not been on the one part a strict compliance, still if the conduct of the opposite party has been such as to evince acquiescence in the delay, such acquiescence will be construed favorably for the party apparently in default, and the opposite party can not be exonerated from performance. For instance, a vendee takes possession of the land purchased, and with the knowledge and assent of the vendor makes lasting and valuable improvements; in such case, a court of equity would be inclined to enforce a specific perfomance, although payment of the purchase money had not been punctually made. More especially would this be the case where improvements had been made without objection, after default of payment. So the receipt of a part or the whole of the purchase money, after the time of payment had elapsed, might be construed into a waiver on the part of a vendor, of any advantage he might have taken in consequence of the default of the vendee. And the same would be the case, should the vendor by any other conduct manifest that he did not intend to insist upon a strict and literal performance by the other party. . And even where the purchase money is payable in installments, and there should be a failure in the punctual payment of one of these installments, I am not prepared to say that a vendor should be exonerated from performance, if, within a reasonable time, the vendee should make payment. But where either party has been guilty of gross, inexcusable neglect, he can not obtain relief in a court of equity. It is apprehended that no specific rules can be established with respect to specific performances, which can be applied in every case, but each particular case must be governed more or less upon its own peculiar circumstances.
In the case before the court, the parties have not by express stipulation, made time of the essence of the contract; and the question for consideration is, whether, under the circumstances, the complainant is entitled to the relief sought for; or, in other words, whether, where one of the parties is in default without any available excuse, he can call upon the other for a specific performance.
1 am not aware that a case analogous to the present has been before the court, although the case of Gibbs v. Champion, 3 Ohio, 335, was somewhat like it. Champion sold land ^to Gibbs by contract, and Gibbs agreed to pay the purchase money — one- *394 half on the 26th day of January, and the other half on July 26, 1826. Nothing was paid until the latter day, and then the whole amount due was tendered. The court held that Gibbs was entitled to a specific performance; and one prominent reason assigned for the decision is, that after the default in not paying the first installment, Champion held on to the contract,-and neither offered to return the notes, nor took any other steps to exonerate Gibbs from his liability. In this particular, that case is different from the one now before us. Here the defendants offered to return the notes, and when refused, they were deposited in the hands of a third person, for the use of the maker. At'the' time this offer was made, there had been no material change in the situation of the property or parties. No improvements had been made, no money expended, and there is no evidence to show that the value of the property had in the least changed.
It is urged by the counsel for the complainant that it is not in the power of one of the parties to put an end to or rescind a contract without the assent of the other. This, as a general rule, is undoubtedly correct, and is so as a universal rule where neither party is in default. But where there has been a default, unless the same has been occasioned by circumstances not within the control of the party in default, he can not well complain that the opposite party should not hold himself bound by a contract of which he himself is utterly regardless. In fact, such default is at least equivalent to an express assent to a rescission of the contract, and may be so considered unless acquiesced in by the opposite party.
In the case under consideration the complainant had agreed to pay the first installment of the purchase money on June 16, 1832, but failed to do it. The only excuse offered for this failure is that he was disappointed in the receipt of money. It does not appear that he made the least effort to procure the money or to comply with his obligation. He admits that he had been informed by one of the defendants that prompt payment would be expected, but states that he supposed the sole consequence of non-payment would be that a suit at law would be prosecuted against him for the money. The first installment being due, the defendants, instead of acquiescing in the delay, informed the complainant within a few days thereafter that they considered *tbe contract at an end, tendered him his notes, and did all they could do to free *395 themselves from liability. By this conduct the complainant was notified, if he had not been before, of the intention of the defendants to hold him to a strict compliance. Yet notwithstanding this notice he lay entirely still for more than ten months, and then, just before the second installment fell due, offered to pay the first. Has the complainant shown himself to have been “ ready, desirous, prompt, and eager?” Has he shown any sufficient excuse for his default of payment ? We think not. On the contrary, he appears to have been guilty of gross and culpable negligence, and upon no principle can be entitled to relief in a court of equity.
So far as respects the improvements, they were made after the default and without the knowledge or consent of the defendants. Of course there can be no relief on this ground.
There is much ingenuity in the argument of counsel in attempting to assimilate a contract of this kind to a mortgage; but the analogy will not hold. In the case of a mortgage, the only object of the security is the payment of the money. In case of a land contract one great object is a transfer of the estate. 1 Johns. Ch. 370.
Upon mature consideration, the court are unanimous in the opinion that the relief sought ought not to be granted. The injunction is therefore dissolved, and the bill dismissed with costs.