Thurman, J.
It has been oftentimes held, that time is not of the essence of a contract for the sale of real estate, unless made so by the contract of the parties. Indeed, Lord Thurlow is reported to have said, in Gregson v. Riddle (cited in 7 Ves. 268), that it could not be made so even by a positive stipulation in the contract. But that this dictum is not law, is now generally, if not universally, admitted. Lloyd v. Collett, 4 Bro. 469; Harrington v. Wheeler, 4 Ves. 689; Omerod v. Hardman, 5 Ves. 722; Enest v. Homfray, 5 Ves. 818; Seton v. Slade, 7 Ves. 265; Alley v. Deschamps, 13 Ves. 225; Benedict v. Lynch, 1 Johns. Ch. 374; Scott v. Field, 7 Ohio (pt. 2), 94; Remington v. Kelley, Ib. 101.
It is said by Judge Story, that formerly courts of equity carried the doctrine, that time is not of the essence of the contract, beyond the true limits and to an extravagant length ; but, that “the tendency of modern decisions is to bring the doctrine within such reasonable bounds, as seem clearly indicated by the principles of equity, and a reasonable regard to the convenience of mankind, as-well as to the common accidents, infirmities, and inequalities belonging to all human transactions.” 2 Story’s Eq. ' .
*289 That this remark is fully justified by the decided cases, no one who examines them will doubt.
*The result of the cases seems to be :
1. That time may be made of the essence of the contract by the express stipulation of the parties. See cases above cited.
2. Or, without such express agreement, by the nature of the contract itself, or of the circumstances under which it was made; as where the benefit to accrue from the consideration to be paid, or the conveyance to be executed, materially depends upon a strict performance in point of time. Hutcheson v. McNutt, 1 Ohio, 18 to 21 inclusive; Hepwill v. Knight, 1 Younge & Collyer, 415; 2 Story’s Eq. 776, and note.
3. Although there is no stipulation of the parties that time shall be of the essence of the* contract, nor anything in the nature or circumstances of the agreement to make it so, yet it may be made essential by the proper action of a party who is not in default and is ready to perform, if the other party is in default without justification. Thus, if the vendee, without sufficient excuse, fail to pay at the stipulated time, and the vendor is in no default, and is able and ready to perform all that the contract then requires of him, he may notify the vendee to pay within a reasonable-time, or he (the vendor) will consider and treat the contract as rescinded. In such case, if payment be not made within a reasonable, timé, the vendor has a right to treat the contract ás abandoned by the vendee. In like manner, and with like consequences, the vendee may notify the vendor, if the latter is in default and the former is not. Remmington v. Kelley, 7 Ohio (pt. 2), 97; Higby v. Whittaker, 8 Ohio, 201.
'4. Although there has been no such express notice, yet, “ where the party who applies for a specific performance has omitted to execute his part of the contract by the time appointed for that purpose, without being able to assign any sufficient justification or excuse for his delay; and where there is nothing in the acts or conduct of the other party that amounts to an acquiescence in that delay, the court will not compel a specific performance.” Benedict v. Lynch, Hutcheson v. McNutt, and Remmington v. Kelley, supra.
*5. It is undoubtedlywithin the sound discretion ofthechancellor to refuse to rescind a contract, the specific execution of which he would not decree; and thus leave the parties to their legal remedies. The State v. Baum, 6 Ohio, 386. But, in general, *290 where a specific execution would be refused, a rescission will be decreed. And where the party in default “ has trifled, or shown a backwardness on his part,” and his default is gross, and the circumstances and value of the property have materially changed, a rescission ought to be decreed. Hutcheson v. McNutt, 7 Ohio (pt 2), 21, 22, 25.
6. The idea that vendor and vendee stand in the mere relation of mortgagee and mortgagor, so that, in equity, the same time will be given to the vendee to perform, that is given to a mortgagor to redeem, is contrary to reason and the whole current of modern authorities. It was distinctly repudiated in Benedict v. Lynch, and Remmington v. Kelley; and nearly every case I have cited, and a multitude of others that might be cited, are directly opposed to it.' It was well said by the chancellor, in Benedict v. Lynch, that “ the motion that seems too much to prevail, that a party may be utterly regardless of his stipulated payments, and that a court of chancery will, almost at any time, relieve him from the penalty of his gross negligence, is very injurious to good morals, to a lively sense of obligation, to the sanctity of contracts, and to the character of this court. It would be against all my impressions of the principles of equity to help those who show no equitable title to relief.” And we quite agree with the lord chancellor’s remark, in Alley v. Deschamps, 13 Ves. 224, that “ it would be dangerous to permit the parties to lie by, with a view to see whether the contract would prove a gaining or losing bargain, •and according to the event, either to abandon it, or, considering the lapse of time as nothing, to claim a specific performance.”
Applying the well-settled principles we have mentioned to the facts of the case before us, and it is impossible to avoid the con■clusion that a specific execution ought not to be decreed against Kirby. His vendee, without even the semblance *of a valid •excuse, failed to pay any part of the first or second of the deferred installments, or of the taxes that became due. When written to and asked for payment he took no notice of the letter. Being thus in default, instead of manifesting a disposition to perform his -obligations, as he was bound to do, he writes to a friend in Cincinnati to consult a lawyer, and learn when he can pay Kirby, and •save the lot from sale. “ I mean,” says he, “ the latest period of time. I can pay the money any time.” Here we have his own declaration that he was able to pay at any time, and his very evi *291 dent intention not to pay as long as his own interest, without regard to his duty and Kirby’s rights, would permit him to remain in default. The date of this letter is March 10,1847. On the 12th of the same month, Kirby filed his bill. Afterward, in the same spring, Harrison, the vendee, came to Cincinnati, but neither paid nor offered to pay anything. Hia excuse is, that he understood Kirby had brought this suit. But this fact, instead of affording an excuse, was the most plain notice to him that his default was not acquiesced in; and t[iat therefore, if it was not already too late, it behooved him to make payment without further delay. Ho chose, however, to hold on to his money and defend the suit. He seems to have preferred litigation to payment. Finally, he assigned the contract to Sehon, who subsequently assigned to Cor-wine, by whom it was transferred, on May 31, 1849, to the defendant Spencer, who, after receiving the same, and on the same day, tendered to Kirby $1,145 and demanded a conveyance, which was refused. This tender was not absolute and unqualified. It was not a tender, without condition, of so much money upon the contract ; but the money was tendered as and for the sum necessary to be paid to entitle Spencer to a conveyance, and coupled with a demand for such conveyance. But it was less by nearly $180 than the sum to which Kirby wottld have been then entitled, had he made a deed.
Now, it is to be observed that this insufficient tender, made after four installments had become due, and after Kirby had paid all the taxes and street assessments, amounting to over *$150, and after the property had more than doubled in value, and over two years after the filing of the bill, is the only tender of payment, either in whole or in part, that has ever been made. And no excuse for the delay is shown. It is not even pretended that Kirby acquiesced in it, either actually or constructively. On the contrary, it is clear that he did not.
As to the property, the only possession, if possession it can be called, ever taken by Harrison, was to “ step off the ground with the view of ascertaining how many buildings might be erected on it.” This was on the day of his purchase. And when ho visited Cincinnati, after the bill was filed, “ he also went on the ground.” Neither he nor his assigns have ever made any improvements, paid any taxes, or taken any care of the property. Kirby was left to do all this, while the defendants waited and litigated, and kept their *292 money in their pockets, until the rise in value of the property made it obvious that it would be a good speculation to pay for it and get a title. We are clear that no decree for a .title should be-rendered, and the cross-bill must therefore be dismissed. And we-are also of opinion that this is exactly one of those cases of trifling, with a contract, of backwardness, of gross default, and change of circumstances, mentioned by Judge Burnett, in Hutcheson v.. McNutt, in which not only should a specific execution of the contract be refused, but it ought to be delivered up and canceled.
It is said, however, that Kirby did no positive act manifesting an intention to rescind before filing his bill; and it is argued that this is an insurmountable objection to a decree of rescission. In support of this proposition Higby v. Whittaker, 8 Ohio, 201, is cited. In that case the court say, and very properly, in reference to the facts of the case, that “the law requires some positive act by the-party who would rescind, which shall manifest such intention, and put the opposite party on his guard, and it then gives a reasonable time to comply; but it requires eagerness, promptitude, ability, and a disposition to perform by him who would resist a rescission. of his contract.” The court, when this was said, *were speaking of a rescission by the act of a party, and not by a decree.. The case was not one of a bill to rescind. It was one in which the-vendor had exercised his right to treat the contract as abandoned by the vendee, without asking a court of equity to formally decree its rescission. But here Kirby asks such a decree, and if it were admitted that he did no positive act, before filing the bill, manifesting an intention to rescind, it can not be denied that the-filing of the bill itself manifests his intention clearly enough ; and, hence, if the vendee had a right to pay, he should have made, or tendered, payment within a reasonable time after the bill was filed. This was not done.
It may also be remarked that Kirby retook possession of the-premises before he brought his suit.
Let a decree be entered that the cross-bill stand dismissed; that, the contract be rescinded, delivered up, and canceled ; that out of the money brought into court by Kirby the costs be paid, and that the residue be- paid to the defendant Spencer.