## BLANCHARD v. ARCHER et al.

(Supreme Court, Appellate Division, Second Department. April 15, 1904.)

1. CONTRACT FOR SALE OF REAL ESTATE—TIME AS ESSENCE—CONSTRUCTION.

A contract for the sale of realty recited that it should be binding and in full force and effect up to and including a certain date, "after which date the same shall terminate and become void and of no effect whatsoever." Before this date it was accepted in writing by the proposed grantee, but nothing further was done by him. *Held*, that his assignee was not entitled to specific performance, time being of the essence of the contract.

2. SALE OF REALTY—CONTRACT BY AGENT—AGENT'S SEAL—BINDING EFFECT ON PRINCIPAL.

An owner of real estate is not bound by a contract for its sale made by an agent individually and under his own seal.

Appeal from Special Term, Westchester County.

Action by Minnie A. Blanchard against Gordon B. Archer, Emma E. Stewart, Laura W. Wilson, and others, and William C. Johnson. From an interlocutory judgment in favor of defendant Johnson, defendants Archer, Stewart, and Wilson appeal. Reversed.

¶ 2. See Principal and Agent, vol. 40, Cent. Dig. § 433.

Argued before HIRSCHBERG, P. J., and BARTLETT, JENKS, WOODWARD, and HOOKER, JJ.

William B. Tullis, for appellants.
Robert W. Cromley, for respondent Blanchard.
Ambrose G. Todd, for respondent Johnson.

JENKS, J. The action is in partition. The defendant Johnson pleaded that he was entitled to a conveyance of the interests of other defendants perforce of a contract made prior to the institution of this action. He had sued for a specific performance, but, as this action was reached for trial first, the issue of specific performance was tried, pursuant to stipulation, in this action. The court found for a specific performance, and certain of the defendants appeal from the part of the interlocutory judgment that adjudges it.

The defendant Johnson read in evidence this paper executed by the said defendants, owners of the realty:

"This agreement made this 19th day of November, 1902, by and between Phœbe M. Archer, George P. Archer, Gordon B. Archer, Ella M. Taylor, Laura M. Wilson and Emma Stewart, parties of the first part, and Charles Field Griffen, party of the second part, witnesseth that for and in consideration of the sum of One ($1) Dollar, to them and each of them in hand paid by the party of the second part, the receipt whereof is hereby acknowledged, and other good and valuable consideration to them thereunto moving, the parties of the first part jointly and severally hereby agree to sell and convey unto the party of the second part, or his assigns, all that certain farm of land, known as the Archer Farm, situate, lying and being in the Town of Harrison, County of Westchester and State of New York, bounded and described as follows: On the North by North Street; on the east by land now or late belonging to the Matthew's estate; on the south by land of William Haviland and Henry Seymour, and on the West by the Mamaroneck River; for the sum of Thirty-two Thousand ($32,000) Dollars. It is hereby understood and agreed that this contract shall be binding and in full force and effect up to and including the 27 of November, 1902, at after which date the same shall terminate and become void and of no effect whatsoever. Witness our hands and seals the day and year first above written."

He also read in evidence this letter, signed by the said Charles Field Griffen, and sent by him to the person addressed—Mr. Taylor—who was an attorney intrusted with the negotiations:

"Nov. 26th, 1902.

"Benjamin Irving Taylor Esq., Port Chester, New York, Attorney for George P. Archer, Ella M. Taylor, Phebe M. Archer, Laura W. Wilson, Emma E. Stewart and Gordon B. Archer—Dear Sir: Referring to the agreement made on the 19th inst. between the above named parties and myself, I hereby notify you of my acceptance of the proposition stated in said instrument, namely, to purchase the property known as the Archer Farm, containing ninety-seven acres, more or less, for the sum of Thirty-two Thousand Dollars. I would thank you to send me the deed of the property, together with any title papers you may have so that a contract may be prepared accordingly."

The learned Special Term decided that the execution and delivery of the instrument dated November 20, 1902, and the execution and delivery prior to November 27, 1902, of the instrument dated November 26, 1902, and signed by Mr. Griffen, constituted a contract, and that the said Griffen and his assignee, Johnson, "having within a reasonable time thereafter been ready to fulfill said contract," spe-

cific performance should be decreed. The plea that, notwithstanding the expiry of the fixed period of a contract, a party thereto has a reasonable time thereafter to perform his part, necessarily negatives the proposition that time was the essence of the contract. Johnson does not pretend that his assignor did aught but send this letter of acceptance within the fixed period, determined by the date, November 27, 1902. There is strong indication that Griffen did not regard this writing, coupled with his letter of acceptance, as the contract, inasmuch as after his letter a more formal and definite contract was drawn up between Taylor and Griffen. But neither Griffen nor his assignee can declare upon that contract, for reasons which I shall hereafter set forth. Assuming, then, that the minds of the parties met, the question is whether time is of the essence of the contract, in the light of the clause:

"It is hereby understood and agreed that this contract shall be binding and in full force and effect up to and including the 27 of November, 1902, at after which date the same shall terminate and become void and of no effect whatsoever."

It is to be noted that this provision is not limited to the performance of a detail of the agreement, but expressly refers to the very life of the contract itself. Short of the express provision that "time shall be of the essence of this contract," words of more positive or explicit limitation are far to seek.

Fry on Specific Performance says:

"Time is originally of the essence of the contract, in the view of the court of equity, whenever it appears to have been part of the real intention of the parties that it should be so, and not to have been inserted as a merely formal part of the contract. As this intention may either be separately expressed, or may be implied from the nature or structure of the contract, it follows that time may be originally of the essence of the contract, as to any one or more of its terms, either by virtue of an express condition in the contract itself making it so, or by reason of its being implied." Section 1045.

The learned writer notes the oft-quoted language of Alderson, B., in Hipwell v. Knight, 1 Y. & C. 415:

"I do not see, therefore, why, if the parties choose even arbitrarily to stipulate, provided both of them intend to do so, for a particular thing to be done at a particular time, such a stipulation should not be carried literally into effect in a court of equity. That is the real contract. The parties had a right to make it. Why, then, should a court of equity interfere, to make a new contract which the parties have not made?" Fry, supra, note, p. 513.

Prof. Pomeroy, in his work on Specific Performance (section 390), says:

"It is now thoroughly established that the intention of the parties must govern, and if the intention clearly and unequivocally appears from the contract, by means of some express stipulation, that time shall be essential, then the time of completion or of performance, or of complying with the terms, will be regarded as essential in equity as much as at law."

He cites many cases in the notes.

The opinion of Kent, C., in Benedict v. Lynch, 1 Johns. Ch. 370, 7 Am. Dec. 484, is a most thorough and exhaustive discussion of the doctrine. See, too, Wells v. Smith, 2 Ed. Ch. 78, affirmed in 7 Paige, 22, 31 Am. Dec. 274.

In Merchants' Bank v. Thomson, 55 N. Y. 7, 12, the court say:

"Doubtless the later tendency of courts of equitable jurisdiction is to hold that time is material, and is in many cases of the essence of the contract."

See, too, Codding v. Wamsley, 1 Hun, 585, affirmed in 60 N. Y. 644.

In Schmidt v. Reed, 132 N. Y. 108, 30 N. E. 373, the court say:

"The parties to a contract may, by its terms, make the time of performance essentially important, and its observance in that respect requisite to relief. Benedict v. Lynch, 1 Johns. Ch. 370 [7 Am. Dec. 484]."

See, too, Waterman on Specific Performance, §§ 436, 461, citing many cases; Phelps v. I. C. R. R. Co., 63 Ill. 468; Fullerton v. McLaughlin, 70 Hun, 568, 24 N. Y. Supp. 280; Westerman v. Means, 12 Pa. 97; Mason v. Payne, 47 Mo. 517.

Bispham, in his Principles of Equity (6th Ed.) 514, says:

"A court of equity will relieve against delay and enforce specific performance notwithstanding a failure to keep the dates assigned by the contract, either for the completion, or for the steps toward completion, if it can do justice between the parties, and if there is nothing in the express stipulations between the parties, the nature of the property, or the surrounding circumstances, which would make it inequitable to interfere with and modify the legal right. This is what is meant, and all that is meant, when it is said that in equity time is not of the essence of the contract."

This language is also quoted in Perkins' notes to Sugden on Vendors, p. 260, as the rule enunciated by a great English judge (Cairns, L. J., in Tilley v. Thomas, L. R. 3 Ch. Ap. 67).

I think that the mere acceptance by Griffen prior to November 27th did not satisfy the terms of the agreement. Taylor, the attorney and the alleged agent who drew up the paper, testifies that he sent it to Mr. Griffen on November 20th, the day following the date thereof. The general rule is that time runs from the date, and not from the delivery, unless, owing to delay in the delivery, the execution is thereby rendered impossible. Waterman on Specific Performance, § 464, citing authorities; Perkins' Sugden on Vendors, 258, note, citing Goldsmith v. Guild, 10 Allen, 239. It is not suggested that the paper was unreasonably delayed in transit. I think that the construction of the agreement is that neither party could insist upon a performance thereof subsequent to November 27th.

The defendant cannot rely upon the agreement of Taylor made November 27, 1902. It is not contended that Taylor was an owner. The record shows that the agreement was Taylor's agreement, made under his seal. The owners are not bound thereby. Even though Taylor was their agent, this could not be shown with respect to such agreement under seal. Denike v. De Graaf, 87 Hun, 61, 33 N. Y. Supp. 1015, affirmed in 152 N. Y. 650, 47 N. E. 1106, and authorities cited; Story on Agency, 175–178.

The interlocutory judgment, in so far as appealed from, should be reversed, with costs. All concur.