(100 App. Div. 99)

## HENION v. BACON.

(Supreme Court, Appellate Division, Fourth Department. January 4, 1905.)

1. SALE OF LAND—CONTRACT—TIME TO EXERCISE OPTION—WAIVER.

    Plaintiff's assignor, S., being desirous of purchasing defendant's farm, defendant agreed to rent the farm, giving S. an option to purchase within two years for a specified price and cost of necessary improvements, less one-half of the net income of the farm during the period of the option; defendant to furnish a statement of the cost of such improvements and of the income. Before the expiration of the option, S. demanded such statement, but the statement furnished was not satisfactory. The negotiations continued during several months after the expiration of the option, when defendant declined to further consider the matter and terminated negotiations. *Held*, that defendant waived his right to a strict performance of the contract by S., and could not terminate the negotiations and refuse to convey without previous notice.

    Stover, J., dissenting.

Appeal from Special Term, Orleans County.

Action by Carrie M. Henion against Napoleon B. Bacon. From a judgment for defendant, plaintiff appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

L. M. Sherwood, for appellant.

Isaac S. Signor, for respondent.

SPRING, J. On the 6th day of April, 1900, the defendant was the owner of a farm in Orleans county, which he had purchased at a foreclosure sale. The plaintiff's assignor, John Stockham, was in possession of the same as tenant. The defendant desired to commence farming on the premises, and Stockham was desirous of purchasing the same; and, with these objects in view, they entered into an agreement for the purchase of said farm by Stockham, at his option, by complying with the terms of the agreement. By this contract, Stockham agreed to vacate the farm, and the defendant was to place a tenant in possession thereof, and it was to be carried on "wholly within the discretion of said Bacon." An account of "the net income of said farm" was to be kept, one half of which belonged to the tenant of the defendant, and "the other half of which shall be accounted for to Stockham in case he completes the purchase of said premises, and allowed toward the purchase price thereof." The agreement further provided that the purchase price should be the sum due at the foreclosure sale, with interest thereon, together with whatever expenditures were made by making improvements or in carrying on said farm, and the defendant was to be "the sole judge" of the improvements to be made. The agreement was to continue in force for two years, "at which time its provisions shall become null and void unless renewed." This agreement therefore gave Stockham two years in which to make the purchase desired by him. When he made his election, the effect of its consummation would be treated as of the date of the option agreement. Interest was to begin at that time, and Stockham was to receive one-half of the net income, precisely the same

as the defendant would if the option did not ripen into a sale. The agreement imposed burdens upon each of the parties. Stockham must make his election within the stipulated period, and thereupon the defendant must furnish a statement of the net income, so that Stockham might know the amount of money which he was to pay to make up the balance of the purchase price. Stockham early in March, 1902, applied to the defendant for an extension of time of the agreement, which was not granted. He asked for a statement of the account, which the defendant told him to get from the tenant; and Stockham testified that he then said to the defendant that he would have the money ready to complete the purchase, and that he had two or three parties ready to buy, and the defendant said, "All right; go and look over with Chester" (the tenant). At any rate, he did apply personally to the tenant for a copy of the account. Mr. Sherwood, his attorney, demanded a statement of the tenant, informing him that he "had a man to take the farm, and wanted a statement to know how much it was," and afterwards wrote the following letter to the tenant:

"C. M. Harding, Knowlesville, N. Y.: Your letter duly received. I want that Stockham account at once. Mr. Stockham is obliged to take this place before April 5th, and before he can take it he must know how he and Bacon stand, and I want you to make out that account and send it to me in plenty of time before April 5th.

        "Yours truly,                          L. M. Sherwood."

No account was rendered by the tenant, but on the 3d of April he wrote to Mr. Sherwood as follows:

                                    "Albion, N. Y., April 3rd, 1902.
    "Mr. L. M. Sherwood, Medina, N. Y.—Dear Sir: Mr. Stockham and I have gone over the figures concerning the contract which he has with Mr. Bacon, and we found—

    The total indebtedness against the farm....................... $8,953 06
    Total credit to Mr. Bacon and ½ of produce now on farm....... 1,280 48

    Amount due on farm April 1st, 1902........................ $7,672 58
        "Yours truly,                    C. M. Harding, Jr.,
                                       "Albion, N. Y. (F. R. D. No. 5)."

It is apparent from the evidence that Stockham intended to purchase the farm. For this reason he met the defendant during the month of March, and, with the same object in view, applied to the tenant personally and by letter for a statement of the account, which was essential before the amount he was required to pay could be ascertained. The referee has found, however, that the plaintiff did not notify the defendant of her acceptance of her option to purchase, and there is evidence to warrant this finding of fact.

Had the matter terminated on the 6th of April, the plaintiff probably would be remediless, for time is the essence of the agreement. Blanchard v. Archer, 93 App. Div. 459, 87 N. Y. Supp. 665. The parties, however, continued their negotiations. The items of the account were subsequently presented by the tenant, although not until August or September, and some of them were unsatisfactory to Stockham, who represented the plaintiff. Stockham and the tenant met frequently in the endeavor to adjust the account. The de-

fendant personally attended some of these conferences, and was also represented by his attorney. Items of the account were stricken out by the assent of the parties, and, although the account was not finally adjusted or all the items disposed of, yet, according to the testimony of Mr. Filkins, the attorney for the plaintiff, it was reduced to $7,094.32, as far as the items were passed upon. There was a meeting on the 10th day of December, 1900, and no agreement was reached. On the following day the defendant notified Stockham that he declined "to further consider the matter of a sale of said farm to you, and that all proceedings with reference thereto are hereby terminated." During these negotiations the defendant stated several times that all he wanted was the money due him. He was not insisting that the option agreement had expired, but the negotiations were obviously carried on for the purpose of getting the account adjusted to enable the plaintiff, as Stockham's assignee, to obtain the benefits of the agreement. There was no sense in these negotiations, unless that was the expectation of the parties. The defendant did not owe Stockham anything, and the items of the account were of no consequence or interest to the latter, unless the option agreement was in force. The parties were not meeting to air their grievances over the items of the account aimlessly, and with no beneficial purpose in mind; but they were seeking to get the same adjusted, in order to have the sale consummated. The plaintiff was interested in the items of the account. The defendant could not embody therein improper charges, and require the plaintiff to assent to them. That the account did contain items to which objections might fairly be made is testified to by Mr. Filkins, and is substantially uncontradicted. In view of this waiver of strict performance, the defendant could not suddenly turn about and end the agreement while an honest attempt was being made to get the account adjusted. A reasonable notice, at least, should have been given the plaintiff of this intended change of front, and an opportunity afforded her on some basis to avail herself of the election to which she was entitled. This notice was served after some items, substantial in amount, had been eliminated from the account, and yet the defendant did not even fix any sum which he was willing to allow as one-half of the net income to the plaintiff. The phraseology of the notice of termination supports the plaintiff's contention that the defendant, by his acts, is estopped from insisting upon a strict performance of the agreement. He declines further to consider the matter, and "all proceedings with reference thereto are terminated"; implying that the negotiations had been in progress, and that he had not been insisting that the question of time was of importance in the interpretation of the agreement. Mr. Currie, a responsible man, was apparently ready, at the instance of the plaintiff, to purchase the farm for $9,000. He had arranged with a bank to furnish him sufficient money to complete the purchase. He made this arrangement with Mr. Stockham prior to April 1st, and expected during the pendency of the negotiations to purchase the farm at the price named, and kept apprised of the situation of affairs for this purpose, and in Septem-

ber advised the defendant that he was ready to take the farm at $9,000. The plaintiff therefore had a substantial equity in this agreement. If the sale to Currie could have been completed, there was a profit to her of nearly $2,000; and the defendant, after acquiescing in and taking part in these negotiations, warranted only by the operation and continuance of the agreement, could not summarily deprive the plaintiff of her rights in this contract. The judgment should be reversed and a new trial granted, with costs to the appellant to abide the event.

Judgment reversed and a new trial granted, with costs to the appellant to abide the event. All concur, except STOVER, J., who dissents in memorandum.

STOVER, J. (dissenting). I dissent. The agreement of April 6, 1900, was a mere option, and plaintiff's assignor was bound to exercise it within two years, unless renewed. There is no claim that it was ever renewed, but an attempt is made to prove a waiver. I do not think the evidence shows anything more than an attempt to make a new arrangement for the purchase of the farm. Until plaintiff's assignor had given notice that he intended to take the farm under the agreement, he was not entitled to the statement of account; for it was, only in the event of his becoming the purchaser that he had any interest in the amount that had been expended, and defendant was not bound to give notice of his intention to exercise his option. But, beyond all this, defendant did give him a statement, and the fact that it was not satisfactory did not extend the time to exercise the option. Plaintiff's assignor seems to have acted upon the theory that he was entitled to know how much the net income of the farm was before he exercised his option. I think he was wrong in thus interpreting the contract. It does not appear that he performed on his part, and I do not think defendant was in default.

I think the judgment should be affirmed.